**Martha C. BARONE, et al.**

v.

**Mary C. HACKETT, Director of the Rhode Island Department of Employment Security.**

**UNITED STATES of America**

v.

**RHODE ISLAND DEPARTMENT OF EMPLOYMENT SECURITY.**

**Civ. A. Nos. 81–0090 P, 83–0541 P.**

United States District Court,
D. Rhode Island.

Sept. 4, 1984.

Ernest Barone, Providence, R.I., for plaintiff in Civ. A. No. 83–0090.

Burton Craige, Katherine A. Baldwin, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff in Civ. A. No. 83–0541.

Donald Elbert, Sp. Asst. Atty. Gen., Charles McLaughlin, Dept. of Atty. Gen., Providence, R.I., for defendant in both cases.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiffs in both of these actions have moved for summary judgment on the issue of liability. The facts are not in dispute. From April 29, 1979 to August 1, 1981, the maternity benefits section of the Rhode Island Temporary Disability Act, R.I.G.L. § 28–41–8, treated women who suffered temporary disabilities due to pregnancy differently from people with other disabilities. Rather than computing disability benefits in the usual manner under the statute, pregnancy-related disability benefits were limited to a lump sum payment of $250 until May 14, 1980, and $500 from then until July 5, 1981. Women who gave birth during the period from July 5 through July 31, 1981 were allowed to choose either the $500 lump sum or receive standard temporary disability insurance (TDI) benefits *only* for disability weeks beginning on or after July 5. In addition, from April 29, 1979 to July 5, 1981, women disabled by pregnancy were not given waiting period credit for subsequent disabilities. *See* R.I.G.L. § 28–41–8(2) (1979); R.I.G.L. § 28–41–12. As a result, a woman previously disabled by pregnancy who became disabled again in the same benefit year could lose seven days of TDI benefits. The remainder of the facts and the legal analysis of this Court's October 12, 1982 Opinion and Order in *Barone v. Hackett* is hereby incorporated by reference herein.

The main issue in dispute is whether Ms. Hackett is the "employer" within the meaning of Title VII of women receiving TDI benefits. The defendant argues that since Ms. Barone worked for Rhode Island Hospital Trust and Ms. DePalma worked

for Amica Mutual Insurance Company at the times of their respective pregnancies, the defendant cannot be considered their employer. However, as a previous opinion in this case recognized, Title VII liability is not limited to the entity which issues pay checks to the employee. *See* Opinion and Order of October 12, 1982 at 18–31.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, *or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,* because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). Therefore, in the case of *Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C.Cir. 1973), the court found that a hospital which refused to let a male nurse attend to female patients on a private duty basis could be liable to him under Title VII even though it did not employ him. Similarly, in *Puntolillo v. New Hampshire Racing Commission,* 375 F.Supp. 1089 (D.N.H. 1974), then—District Judge Bownes found that a horse trainer employed by horse owners could nevertheless sue the state racing commission under Title VII on a claim of discrimination in allocating stall space and issuing a racing license because of his national origin.

TDI benefits in Rhode Island are among the "terms, conditions, or privileges of employment" in this state. TDI benefits do not come out of the general revenues of the state, but rather come out of a separate account funded by contributions from the working men and women of the state. These contributions are mandatory and set at a certain level by state law. R.I.G.L. § 28–40–1. Once disabled, only those who have worked for a minimum period of time are entitled to TDI benefits. R.I.G.L. § 28–41–11. Moreover, the level of weekly TDI benefits (except for pregnancy before July 5, 1981) is set as a proportion of the individual's average weekly wages. R.I. G.L. § 28–41–5.

The legislative history of the Pregnancy Discrimination Act shows some recognition that a state TDI program such as Rhode Island's would be affected by it. As this Court noted at page 30 of its October 12, 1982 Opinion and Order,

> [d]uring the Senate debate on the Act, Senator Hatch asked Senator Williams, one of the bill's sponsors, if he believed that the Pregnancy Discrimination Act would displace state law. 123 Cong.Rec. 29,643 (Sept. 15, 1977). Senator Williams responded, "I would think if a State law did select [pregnancy for special treatment], and it were found through all the tests on discrimination that classification and selection [of pregnancy] were discriminatory, then the State law that discriminated would not be permitted to stand on a test." *Id.* Senator Hatch apparently agreed with this interpretation of the amendment. After discussing the state disability program which had been upheld in *Geduldig v. Aiello,* 417 U.S. 484 [94 S.Ct. 2485, 41 L.Ed.2d 256] (1974), he stated, "In disability programs such as that of the State of California, where employees contribute to the disability program, the added cost of mandatory maternity-related coverage [required by this Act] will be passed on to all employees, regardless of whether they are the recipients of the added protection." *Id.* at 29,645.

In addition, the House Committee Report on the House of Representatives' original version of the Pregnancy Discrimination Act refers to state TDI coverage of pregnancy such as Rhode Island's as a "fringe benefit." H.R.Rep. No. 948, 95th Cong., 2d Sess. 10, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4749, 4758. The Committee Report also shows that Congress was aware of the pregnancy coverage then in place under Rhode Island law. *See id.* at 10–11, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 4758–59.

The defendant has also argued that the plaintiff class may not recover damages because of the United States Supreme Court's decision in *Los Angeles Department of Water and Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657

(1978), and *Arizona Governing Committee For Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). In both *Manhart* and *Norris,* the Supreme Court denied retroactive relief. The primary reason for this was that *Manhart* and *Norris* dealt with pension plans in which contributions and benefits were set with the aid of mortality tables. Requiring employers to "top up" women's benefits would have cost many billions of dollars. *See Norris,* 103 S.Ct. at 3510 (Part III of Justice Powell's Opinion, in which Chief Justice Burger and Justices Blackmun, Rehnquist, and O'Connor joined). In addition, the *Norris* majority noted that *Manhart* did not make the practice at issue in *Norris* clearly illegal. *See id.* Therefore the Court made the relief prospective only.

In contrast, the level of benefits and contributions under the Rhode Island TDI plan are not as rigidly governed as if set by an annuity table. Both the level of benefits and the level of contributions are set by state law. Moreover, Rhode Island should have had notice that its TDI plan could violate Title VII as amended by the Pregnancy Discrimination Act. The case is therefore not moot.

Finally, the state argues that Ms. Barone did not file a charge with the EEOC and that this Court therefore lacks jurisdiction of these cases. This Court discussed this issue at length in its October 12, 1982 Opinion and Order at 9–18, and then found against defendant Hackett. The Court today readopts that reasoning. Moreover, although the formal charge of discrimination drafted by EEOC officer Thomas Roderick did not name the state as a defendant, *see* formal charge and affidavit of Martha C. Barone dated July 1, 1982, Ms. Barone's EEOC Intake Questionnaire, which she filled out herself does clearly name the State of Rhode Island as one of the entities which discriminated against her.

Therefore, the Court finds that defendants are liable under Title VII for treating pregnancy differently than other disabilities under the state TDI program.

So Ordered.