UNITED STATES of America

v.

RHODE ISLAND DEPARTMENT OF EMPLOYMENT SECURITY, et al.

Martha C. BARONE, et al.

v.

Mary C. HACKETT, Director of Rhode Island Department of Employment Security.

Civ. A. Nos. 83–0541 P, 81–0090 P.

United States District Court,
D. Rhode Island.

Sept. 6, 1985.

Lincoln C. Almond, U.S. Atty., Providence, R.I., Burton Craige, Katherine A. Baldwin, U.S. Dept. of Justice, Washington, D.C., for plaintiffs in No. 83–0541.

Ernest Barone, Providence, R.I., for plaintiffs in No. 81–0090.

Donald Elbert, R.I. Atty. Gen.'s Dept., Charles H. McLaughlin, David Tammelleo, Providence, R.I., for defendants.

## OPINION AND ORDER

PETTINE, Senior District Judge.

On September 4, 1984, I entered judgment in these cases finding defendants liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), for limiting the benefits available to women disabled by pregnancy to a fixed lump sum, rather than computing them in the usual manner provided for in the Rhode Island Temporary Disability Act, R.I.G.L. § 28–41–8. *Barone v. Hackett,* 602 F.Supp. 481 (D.R.I.1984). The background of this action, as well as the details of the state's benefits program for women disabled by pregnancy during the relevant time period of April 29, 1979 to July 5, 1981, and the ways in which the program impermissibly treated pregnancy-related disabilities differently than other disabilities, are all set forth fully in that opinion.

Shortly after entry of that judgment, I entered an order setting forth the procedures to be followed in the remedial phase of this litigation. The order provided that an Agreed Statement of Facts would be submitted by the parties.[1] The order also permitted all parties to submit, subject to defendants' right to appeal the finding of liability, a proposed final decree, and permitted plaintiff Patricia DePalma to move to certify a class on the issue of relief. I had previously certified a class in this action, but had limited that certification, pursuant to Fed.R.Civ.P. 23(c)(4)(A), to the issue of liability. *Barone v. Hackett,* No. 81–0090–P (D.R.I. June 23, 1983) (hereafter, "Opinion and Order of June 23, 1983"). Having carefully reviewed the materials submitted on the issue of relief, I now conclude as follows:

### 1. *Whether Back Pay Should Be Awarded Here*

■ The United States Supreme Court has made clear that, once a party has been found liable under Title VII, "back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle*

---

**1.** On November 9, 1984, the parties filed an Agreed Statement of Facts that sets forth the principal facts relevant to the issue of relief. On January 28, 1985, the parties filed a Supplemental Agreed Statement of Facts, appended to which is a study performed by defendants that estimates the cost that would be involved in providing retroactive benefits to victims of the benefits program for pregnancy-related disabilities.

*v. Moody,* 422 U.S. 405, 412, 95 S.Ct. 2362, 2369, 45 L.Ed.2d 280 (1975). Accordingly, although back pay is a discretionary remedy under Title VII, there is a "strong presumption," in favor of its award, *Arizona Governing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 3502, 77 L.Ed.2d 1236 (1983), which may be overcome only in "special circumstances," *id.* 103 S.Ct. at 3503; *City of Los Angeles v. Manhart,* 435 U.S. 702, 718, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1980).

Here, I find an award of back pay (in the form of retroactive benefits) amply justified. Women who contributed their own wages to partially finance a state disability plan and were denied benefits that would have been owing to them, but for the defendants' decision to give disfavored treatment to disabilities due to pregnancy, will not be made whole absent such an award. I cannot accept defendants' argument that the administrative costs of providing such relief, and the overall cost of retroactive benefits to the state's Temporary Disability Insurance ("TDI") fund, should bar an award here. Were state and local governments (to whom defendants are fairly analogized) who are found to have violated Title VII permitted to wrap themselves in the mantle of the public treasury, rather than to pay monies owing to the victims of their illegal conduct, Congress' purpose in subjecting such parties to the strictures of Title VII, *see* 42 U.S.C. § 2000e(a); *see generally Fitzpatrick v. Bitzer,* 427 U.S. 445, 449, n. 2, 96 S.Ct. 2666, 2668, n. 2, 49 L.Ed.2d 614 (1976)

(discussing 1972 amendment of Title VII to bring state employers within purview of Act), would be wholly thwarted. *See Liberles v. County of Cook,* 709 F.2d 1122, 1135–36 (7th Cir.1983); *Carpenter v. Stephen F. Austin State University,* 706 F.2d 608, 631–32 (5th Cir.1983). To be sure, there are limited circumstances in which the costs of back pay may militate against its award,[2] but I can find no exception here to the general principle that the potential cost to the discriminating party is not a proper basis upon which to deny such relief.[3]

2. *Class Certification on the Issue of Relief*

In my June 1983 opinion, I discussed at length why I found this case appropriate for certification, pursuant to Fed.R.Civ.P. 23(b)(2), on the issue of liability. Most of the reasons relied upon there are equally applicable to certification pursuant to Rule 23(b)(2), on the issue of relief, and I accordingly incorporate that opinion by reference herein.

In that opinion, I did decline at that time to certify the class, as represented by Patricia DePalma, on the issue of relief. I so declined because I was not certain then that the requirements of Fed.R.Civ.P. 23(a) could be satisfied where the amount of any monetary relief owing to class members would vary among individuals, according to the length of their period of disability, and the amount of benefits to which they were entitled during the relevant time period

---

**2.** I have already discussed, in my opinion of September 4, 1984, and need not repeat here, the factors which I believe distinguish this case from *City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) and *Arizona Governing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), in which retroactive relief was not awarded to victims of discriminatory pension plans. *See Barone v. Hackett, supra,* 602 F.Supp. at 484.

**3.** Defendants' reliance on this Court's opinion in *Bowen v. Hackett,* No. 5038 (D.R.I. April 2, 1976) is misplaced. In *Bowen,* I declined to award damages to female disability claimants who were discriminated against in violation of the Equal Protection Clause of the Fourteenth

Amendment. In that case, there was no statutory presumption in favor of back pay comparable to the one created by Title VII. The approach employed in that case is, therefore, not well suited to the Title VII context. Moreover, unlike in *Bowen,* the cost study submitted here by the defendants themselves, *see* Supplemental Agreed Statement of Facts, Appendix K, and the information in the Agreed Statement of Facts as to the assets currently available to the Fund, *see* Agreed Statement of Facts, ¶¶ 13–16, indicate that the Fund is currently able to both remedy the effects of its past discrimination and to comfortably continue to pay benefits to current contributors.

under the standard statutory formula used for non-pregnancy-related disabilities.[4]

█ I do not now find, however, that the fact of individual differences in back pay should bar certification on the issue of relief, nor bar class representation by De-Palma in particular. "In almost every class action, factual determinations like [those pertaining to the restitution due] individual class members must be made," *Samuel v. University of Pittsburgh*, 538 F.2d 991, 995 (5th Cir.1976) (citations omitted), yet this fact alone cannot properly "prevent [ ] a court from aiding the class [certified on liability] to obtain its just restitution," *id.* at 995 (footnote omitted). This is so because, where the class members have "suffered discrimination as a result of a uniform, centrally administered policy," *Resnick v. American Dental Ass'n*, 90 F.R.D. 530, 539 (N.D.Ill.1981), the requirements of commonality, Fed.R.Civ.P. 23(a)(2) and typicality, Fed.R.Civ.P. 23(a)(3), are adequately met even without complete identity of damage sustained. *See* Newberg on Class Actions (Second Edition) (1985), § 10.-02, at 360; § 24.28, at 274–299; *Cf. Berman v. Narragansett Racing Ass'n*, 414 F.2d 311, 316 (1st Cir.1969), *cert. den.* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970). To read Rule 23 to require complete identity would "unduly confine class actions to the narrowest circumstances." *Resnick v. American Dental Ass'n, supra*, 90 F.R.D. at 539.

Likewise, the fact that the class representative may be entitled to back pay in an amount different from that owed other class members does not automatically destroy the adequacy of her representation, nor create any conflict among class members going to the "very subject matter of the litigation." *Lamphere v. Brown University*, 71 F.R.D. 641, 650 (D.R.I.1976), *app. dismissed* 553 F.2d 714 (1st Cir.1977), (quoting 7 Wright & Miller, *Federal Practice & Procedure*, § 1768, at 639). Where as here, each class member may recover for her own reasonably ascertainable loss of benefits, the amount awarded to any single class member will neither diminish nor enhance the sum due any other class member. There simply is no risk of conflict where class members are entitled to recover only the sum personally lost—irrespective of total size of the class or the sum lost by any particular individual.

Accordingly, for these reasons, and the reasons set forth in my Opinion and Order of June 23, 1983, I hold that the class certified for liability may be likewise certified for relief.

### 3. *How the Back Pay Should Be Computed*

█ Because a finding of the defendant's liability has been made, it is now incumbent upon individual class members to show that they lost benefits to which they were properly entitled by virtue of defendants' use of the lump sum benefit during the period of their disability. *See Teamsters v. United States*, 431 U.S. 324, 361–62, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977). Any claimant who would have received additional benefits had the applicable general statutory formula been used, is entitled to recover the difference between what she received as a lump sum and what she would have received at the general rate.[5]

█ Of course, any woman who suffered no loss as a result of the lump sum award, or who, because of the length of the period

---

**4.** The Agreed Statement of Facts at ¶ 1, and the materials to which it refers, explain in detail the manner in which non-pregnancy disability benefits were calculated during the relevant time period. In substance, the calculation depended upon the period of disability certified by a physician; the claimant's average weekly wages (a proportion of which was paid as benefits); any dependency benefits for children or incapacitated adults for which a claimant qualified; and the amount of any "waiting period" credits, up to a total of one week, previously earned in the same benefit year by a claimant.

**5.** As the final decree sets forth, this sum includes not only the additional weekly benefits which a woman would have received under the general formula, but any amount owing in dependency benefits and waiting period credit, as well.

of her disability, actually recovered *more* through the lump sum than she would have under the general statutory formula, is not entitled to any relief in this action.[6]

The requisite showing by each class member may be made based largely upon information currently in the defendants' records. As the Agreed Statement of Facts reflects, the defendants possess, as to the approximately 9000 women who received pregnancy-related disability benefits during the relevant time period, information sufficient to establish: the rate of weekly benefits to which each claimant was entitled under the general statutory formula; the last day each woman worked before the onset of her disability; and the date on which her childbirth occurred. The only relevant piece of information not known to defendants is the length of the period of disability for each woman. This fact is missing because the defendants did not record the length of disability for pregnancy, as they did (and do) for all other disabilities—nor did they require physicians to certify the same, as they did (and do) for all other disabilities.

How should this critical link be established? In their proposed final decree, plaintiffs suggest two alternative approaches. First, plaintiffs propose to use as the period of each individual's disability a time period equal to the mean length of disability of all claimants who received TDI benefits for a pregnancy-related disability in 1982 and 1983 (years in which the defendants did record the length of each claimant's pregnancy disability). This

mean period is equal to 6.95 weeks. Second, plaintiffs propose to require the defendants to attempt to ascertain from each claimant's physician the estimated period of disability, using the same procedures employed by defendants during the relevant time period for all other disabilities. If, under this approach, defendants could not acquire the needed information for a claimant, her benefits would be computed by utilizing the mean length of disability described above.

■ In the final decree, I have adopted a version of the second alternative. Conceding that "unrealistic exactitude is not required" in fashioning individual relief for classwide discrimination, *Stewart v. General Motors Corp.*, 542 F.2d 445, 452 (7th Cir.1976), *cert. den.* 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977), and that "ambiguities ... should be resolved against the discriminating employer," *id.* at 452, it is nonetheless axiomatic that "where possible an individualized remedy should be utilized because it will best compensate victims of discrimination without unfairly penalizing the employer," *id.* at 453. While classwide calculations, involving averaging, use of comparability statistics or other approximations, are surely required in some employment discrimination cases in order to provide relief, *e.g. Stewart v. General Motors Co., supra,* 542 F.2d at 452, they should not be employed where unnecessary because their use may well "generate a windfall for some employees ... and undercompensate the genuine victims of discrimination by forcing them to share the

---

**6.** In their response to plaintiffs' proposed decree, defendants argue that, if I make an award of back pay, I should also order any claimants who may have been "overpaid" to return the amount of their "overpayment" to defendants. For two reasons, I reject this argument. First, a claim for recoupment should properly have been raised by way of a counterclaim under Fed.R.Civ.P. 13(a), yet none has ever been asserted here. Nor would I allow defendants to now add such a counterclaim, even if they sought to do so. We are now some four years into this litigation, and all of the information upon which any counterclaim for recoupment would be based has been fully available to defendants throughout the pendency of this litiga-

tion. *See, e.g., Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185 (3rd Cir.1979). Second, even if a counterclaim for recoupment had been duly pleaded, it is doubtful that I would be within the proper scope of the remedial powers accorded courts in Title VII actions were I to use those powers to compel innocent parties to return funds paid to them as a result of an illegally discriminatory policy adopted by a public entity. *See Albemarle Paper Co. v. Moody, supra,* 422 U.S. at 416, 95 S.Ct. at 2371 (courts should exercise their remedial powers in light of Title VII's broad objectives); *cf. General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 399, 102 S.Ct. 3141, 3154, 73 L.Ed.2d 835 (1982).

award with their undeserving brethren," *id.* at 452–53.

Here, the sole impediment to individualized relief is an administrative financial one. It is true that defendants will be required to expend additional funds to contact physicians, and that such efforts may be unavailing in some cases, as where the physician cannot be located or is without the relevant information. But I do not believe that this burden alone is the kind of burden that should ban the use of an individualized approach. This is not a scenario where the prospect of making individual awards to class members will inevitably enmesh the court and the parties in a "quagmire of hypothetical judgments," *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260 (5th Cir.1974), *cert. den.* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), as to which class members were unfairly denied a promotion, or not hired in the first instance, in years past. Rather, the amounts involved here are fixed and reasonably ascertainable. Indeed, defendants themselves, while arguing that no back pay at all should be awarded here, take particular exception to any method that depends primarily upon averaging because they believe such an approach is inherently "arbitrary."

▉ Accordingly, pursuant to the procedures set forth in the final decree, reasonable measures should be undertaken by defendants to acquire the needed information from the physicians identified on each individual's TDI–1 form. If those efforts are unavailing, the defendants should use the mean disability period for 1982 and 1983 (*i.e.,* 6.95 weeks), subject, however, to the right of any woman to establish that her disability period was longer and the right of the defendants to establish that the period was shorter, and/or to rebut any class member's claim that the period was longer. Such a procedure will appropriately direct relief to the true victims and is not, in my judgment, based on the facts in the record before me, unduly burdensome or costly to defendants.

▉ Finally, plaintiffs request an award of prejudgment interest. Whether to add such interest to a back pay award is in my discretion as the fact-finder. *Earnhardt v. Commonwealth of Puerto Rico,* 744 F.2d 1, 3 (1st Cir.1984). Because the amount of each class member's lost benefits is a reasonably ascertainable, fixed sum, see *Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729 (1st Cir.1982), *cert. den.* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983), the use value of which the defendants have had and the class members have been denied for up to six years, I find that an interest award is necessary in this case to effectuate fully the make whole remedy envisioned by Congress in Title VII, *Albemarle Paper Co. v. Moody, supra.* See, e.g., *Whiting v. Jackson State University,* 616 F.2d 116, 120, 127, n. 8 (5th Cir.1980) (awarding prejudgment interest on back pay against state governmental employer); *Howard v. Ward County,* 418 F.Supp. 494 (D.N.D.1976) (awarding prejudgment interest against local governmental employer); *E.E.O.C. v. Wooster Brush Co.,* 727 F.2d 566, 578–79 (6th Cir.1984) (pregnancy discrimination); *Pettway v. American Cast Iron Pipe Co., supra,* 494 F.2d at 263; *Chastang v. Flynn & Emrich Co.,* 381 F.Supp. 1348, 1352 (D.Md.1974), *aff'd* 541 F.2d 1040 (4th Cir. 1976). As set forth in the final decree, the rate of interest shall be the adjusted prime rates used by the Internal Revenue Service during the relevant time period. *See Davis v. Const. Materials, et al.,* 558 F.Supp. 697 (N.D.Ala.), *aff'd,* 720 F.2d 1293 (11th Cir. 1983); *E.E.O.C. v. Wooster Brush,* 523 F.Supp. 1256, 1268 (N.D.Ohio 1981), *aff'd* 727 F.2d 566 (6th Cir.1984).

Based upon the judgment of liability previously entered in this case, and all of the foregoing findings, it is hereby ORDERED, ADJUDGED, AND DECREED:

*Monetary Relief*

1. Rhode Island will compensate individuals who were disabled due to pregnancy, childbirth and related medical conditions during the period from April 29, 1979, until

August 1, 1981, and who are entitled to relief under the procedures set forth in paragraphs 2 through 9 of this Decree.

2. Within four months of the date of entry of this Decree Rhode Island will identify from its files all women who received a lump sum maternity benefit pursuant to R.I.G.L. 28–41–8, for any period of pregnancy-related disability from April 29, 1979 (including April 29, 1979), until August 1, 1981.

3. Within four months of the date of entry of this decree, Rhode Island will also identify from its files any of the women identified pursuant to paragraph 2 who were subsequently denied waiting period credit for a second period of unemployment due to sickness in the same benefit year, pursuant to R.I.G.L. 28–41–8(2).

4. Rhode Island will then recompute the benefits due to each woman identified pursuant to paragraph 2 by using the statutory formula prescribed for all persons entitled to benefits for non-maternity reasons, pursuant to chapters 39 through 41 of title 28 of R.I.G.L. In recomputing these benefits, Rhode Island will apply the statutory formula that was in force at the time the applicant was unemployed due to pregnancy-related disability.

5. In recomputing benefits pursuant to paragraph 4, Rhode Island shall:

(a) ascertain the name and address of the attending physician from every TDI-1 claim form filed for a pregnancy-related disability during the period from April 29, 1979, until August 1, 1981 for which a lump sum payment was made;

(b) within sixty (60) days of entry of this decree, send to each physician identified pursuant to subparagraph 5(a) the letter contained in Appendix AA–1 hereto together with a "TDI–3" form, a copy of which is contained in Appendix AA–2 hereto. In the lower left hand corner of each envelope shall prominently appear the notation "Please Forward—Address Correction Requested";

(c) if within thirty (30) days of mailing the letter and TDI–3 form to each woman's attending physician as set forth in subparagraph 5(b), a completed TDI–3 form is not received for a woman, copy of the letter set forth in Appendix AA–1 together with a second TDI–3 form shall be sent to the woman's attending physician;

(d) if, within thirty days of mailing a copy of the letter and second TDI–3 form pursuant to subparagraph 5(c), a completed TDI–3 form is not received for a woman, the Medical Claims Examiner shall attempt to make telephone contact with the attending physician to request return of a completed TDI–3 form and if the physician indicates that he/she has not received the letter set forth in Appendix AA–1 or a TDI–3 form, another copy of each shall be sent immediately;

(e) upon receipt of a completed TDI–3 form for a woman, Rhode Island will recompute her benefits pursuant to paragraph 4 using for that purpose the time period during which her attending physician has estimated that she was disabled from work; and

(f) if, for any reason, no completed TDI–3 form is received for a woman within 120 days of the date of the entry of the decree estimating the period during which she was disabled by work, the State shall tentatively recompute her benefits pursuant to paragraph 4 using for that purpose a time period equal to the mean length of disability of all claimants who received benefits from Rhode Island for unemployment due to pregnancy, childbirth or a related medical condition during 1982 and 1983. Pursuant to the procedures set forth in Paragraph 11, however, any woman shall have the opportunity to establish by appropriate means that her period of disability was longer than the mean period, and Rhode Island shall likewise have the opportunity to establish by appropriate means that the period of disability was shorter than the mean period, and/or to rebut by appropriate means any claim made by a woman that her period of disability exceeded in length the mean period.

6. After recomputing the benefits as set forth in paragraphs 4 and 5, Rhode

Island will subtract from the total arrived at for each woman an amount equal to the lump sum payment she actually received for that period of disability.

7. Rhode Island will then add to the resulting total for each woman an amount equal to the interest on that total, to be computed from the date the lump sum amount was paid to the woman until the notice is mailed to each woman, pursuant to paragraphs 10 and 14. The interest rate shall be the adjusted prime interest rate as it is utilized by the Internal Revenue Service pursuant to 26 U.S.C. 6621, for the effective period of each rate used by the Internal Revenue Service since April 29, 1979.

8. Rhode Island will recompute the benefits for the second period of unemployment due to sickness for each woman identified pursuant to paragraph 3 by granting such women the appropriate waiting period credit employees disabled for other reasons would have received. Any additional amount of money which each such woman is entitled to as a result of the new computation will also be credited with interest earnings, computed by the same rate and method set forth in paragraph 7.

9. The amount arrived at pursuant to paragraph 7 shall be added to the amount computed pursuant to paragraph 8, if any, for one total for each woman identified in response to paragraph 2.

10. Rhode Island shall be responsible for withholding all applicable federal and state income taxes from the award to each woman.

11. Within thirty (30) days of receipt of the completed TDI–3 form from the woman's attending physician, Rhode Island will mail by certified mail, return receipt requested, the letter, release and questionnaire for supplemental claims set forth in Appendices BB–1, BB–2, and BB–3, respectively, to this decree, to each woman identified in response to paragraph 2 regardless of whether the woman is entitled to additional benefits according to the State's calculations. They shall be sent to the most recent address for the woman possessed by Rhode Island and on the envelope "Address Correction Requested—Please Forward" shall be prominently noted in the upper left hand corner, directly below the return address.

12. Within two weeks of receipt of a woman's signed executory release, Rhode Island will mail the appropriate check to the woman.

13. Within thirty days (30) of receipt of a completed questionnaire for supplemental claims (Appendix BB–3) in support of dependency benefits, the appropriate Rhode Island employees will examine the documentation, determine if it supports payment of dependency benefits and, if so, recompute the appropriate benefits and the interest thereon consistent with paragraph 7. Within two additional weeks, Rhode Island will notify each woman of the results of its determination, send a new release form (Appendix BB–2) and forward the appropriate check to her upon receipt of the completed release. The notice to be used by Rhode Island for this purpose is contained in Appendix C.

14. The appeal procedure utilized pursuant to paragraph 13 will include the following steps:

(a) the woman will sign a statement that she appeals the decision and forward it to Rhode Island. An appeal statement form (Appendix D), will be included with the letter (Appendix C) sent to her pursuant to paragraph 13.

(b) within twenty days of receipt of the appeal, Rhode Island will notify both the attorneys for the Justice Department, and the *Barone* plaintiffs. Attorneys for the plaintiffs and an attorney for defendants will review the individual file of each woman who appeals and attempt to reach a joint resolution of the matter.

(c) if the Justice Department, the private plaintiffs, and Rhode Island agree on the result, that result will constitute the final decision on the matter.

(d) if the Justice Department, the private plaintiffs, and Rhode Island are unable to

agree upon a result within ninety days of Rhode Island's receipt of the initial notice of appeal from the woman, the matter will be submitted to the United States District Court for Rhode Island for a hearing and determination in accordance with Title VII of the 1964 Civil Rights Act, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. 2000e *et seq.*

(e) within two weeks after final resolution of each appeal, Rhode Island will notify the woman of the results of the appeal, including, where appropriate, a recomputation of the benefit and the interest thereon; send a new release form to her; and forward the appropriate check to her upon receipt of the completed release.

15. Rhode Island will take the following steps with regard to all women who have not responded in any way to the notice mailed pursuant to paragraph 11:

(a) within forty-five days after the original letter was mailed pursuant to paragraph 11, a follow-up letter will be sent by certified mail, return receipt requested, to each such woman, asking her to respond and noting that she will lose money by not doing so; a copy of the original letter will also be enclosed;

(b) if, forty-five days after the second mailing, more than twenty-five women have not responded, Rhode Island will publish prominent notices for three consecutive days in the front sections of the Providence Journal-Bulletin, the Woonsocket Call, and the Newport Daily News stating that the individually named women are entitled to receive money from Rhode Island, and can do so by contacting a named Rhode Island official, with a given address and phone number. The notice will also solicit information on the location of such women from anyone who might know where they are;

(c) this notice will be republished forty-five days later for three consecutive days in the same manner in the same media, if there are still more than twenty-five women who have not responded or have not been located;

(d) Rhode Island will compile a list of all women who have failed to respond within thirty days of the publication of the last newspaper notice. The list will include, for each woman, all information in Department of Employment Security files which could assist in locating the individual, including all home addresses and telephone numbers, and names and addresses of all employers and dates of employment. The list will be forwarded immediately to the Assistant Attorney General for the Civil Rights Division, United States Department of Justice, Washington, D.C. 20530, to the attention of Chief, Employment Litigation Section. Within one hundred and twenty days of receipt of the list, the Department of Justice will send Rhode Island current addresses of women it has been able to locate; and

(e) for all women located pursuant to subparagraphs (b), (c) and (d), *supra*, the procedure set forth in paragraph 11 shall be followed within two weeks of Rhode Island's receipt of addresses from the Department of Justice.

## RECORDING AND REPORTING REQUIREMENTS

16. Rhode Island agrees to maintain for the duration of this Decree all records concerning the implementation of this Decree, including but not limited to all records relating to those women who received lump sum maternity benefits covering any period of time since April 29, 1979 (and including April 29, 1979). Upon reasonable notice, these records shall be made available to the United States for inspection and copying.

17. Rhode Island agrees to furnish the Assistant Attorney General for the Civil Rights Division, United States Department of of Justice, Washington, D.C. 20530, to the attention of Chief, Employment Litigation Section, semi-annual reports detailing Rhode Island's actions in complying with the undertakings required by this Decree. The first such report shall be submitted six (6) months after the date of entry of this Decree, and subsequent reports shall be submitted semi-annually thereafter until

Rhode Island is able to submit a final report pursuant to paragraphs 19 and 20. The first report shall include the following:

(a) an alphabetical list of the names and addresses of all women identified pursuant to paragraph 2, and the amount of money originally paid to each as a lump sum maternity benefit;

(b) an alphabetical list of the names and addresses of all women identified pursuant to paragraph 3, and the amount of money excluded from their disability benefits because of the failure to grant waiting period credit, pursuant to R.I.G.L. 28–41–8(2).

(c) the period used for recomputing benefits pursuant to paragraph 5(f) for women for whom no completed TDI–3 form was received by DES, including summary statistics which clearly demonstrate how Rhode Island arrived at that figure.

(d) the total amount of money due each woman set forth in subparagraph 17(a) and 17(b), calculated pursuant to paragraphs 4 through 9. In addition, the calculations used to arrive at this total shall be set forth for each woman.

(e) an alphabetical list stating the name of each woman for whom no completed TDI–3 form was received by DES within 120 days of entry of the decree.

(f) an alphabetical list of the names of all women who have returned the signed release form and received the amount of money calculated as due to them, the date the release was received, and the date monetary payment was made.

(g) an alphabetical list of the names of all women who have requested more money under paragraph 12, indicating for each woman: the amount of the request for each such woman; the date of the request; Rhode Island's determination as to the amount due each such woman, if it has been determined, and the basis for that determination; the date of the determination; whether each such woman has returned the signed release form and received the money due to her; and dates of receipt of the release and of payment of the monetary benefit.

(h) an alphabetical list of the names of all woman who have appealed pursuant to paragraph 13, the results of the appeal if finally decided, whether each woman for whom a final appeal has been decided has returned the signed release form and received the money due to her, and the dates of receipt of the release and of payment of the monetary benefit.

(i) an alphabetical list of names of all women who have not responded to the letter sent to them or who have not yet been sent a check, with the reason the check has not been sent.

(j) copies of all newspaper notices published pursuant to subparagraphs 14(b) and 14(c).

18. The semi-annual reports submitted after the first such report shall set forth the information detailed in paragraph 16 above, including the information in subparagraphs 16(e), (f), (g), (h), and (i) as to all women identified in subparagraphs 16(g), (h), and (i) in the immediately preceding report.

19. Rhode Island will continue to submit semi-annual reports until it can certify in a final report with regard to all women who were identified pursuant to paragraphs 2 and 3, that:

(a) those women who have signed release forms have each received a check in the appropriate amount as determined under the procedures of this Decree;

(b) Rhode Island followed all steps outlined in paragraph 14 as to all those women who failed to respond to the original notice;

(c) the appeals have been finally decided of all women who elected to appeal pursuant to paragraphs 12 and 13, and all such women who decided after the final appeal decision to sign the release form have received a check in the amount determined on appeal to be appropriate.

20. The final report will also contain statistics indicating the total number of women who:

(a) have signed the release forms and received their checks;

(b) have been contacted but did not sign a release form; and

(c) could not be located.

## ATTORNEY'S FEES

21. Counsel for the private plaintiffs shall, within thirty days of entry of this Decree, make application for costs and attorney's fees incurred to date. The United States shall, within the same period of time, make application for costs incurred to date. Application for attorney's fees and costs incurred subsequent to entry of the Decree shall be made every three months until dissolution of the Decree.

## EFFECT OF COMPLIANCE

22. Insofar as any of the provisions of this Decree or any actions taken pursuant to such provisions may be inconsistent with any state or local statute, law, or regulation, the provisions of this Decree shall prevail in accordance with the constitutional supremacy of federal substantive and remedial law. This Decree does not create any rights for any individuals under state or local law or regulation.

## RETENTION OF JURISDICTION

23. The Court retains jurisdiction of this action for such further relief or other orders as may be appropriate. If either the United States or the private plaintiffs have reason to believe that Rhode Island may be in violation of this Decree, then that party shall give Rhode Island written notice of the violation. Rhode Island shall have thirty days after receipt of the written notice to investigate and correct or refute the alleged violation. If the parties do not reach agreement regarding the alleged violation by the end of the thirty (30) day period, the party who gave written notice of the alleged violation (*i.e.*, the United States or private plaintiffs) may apply to the Court for appropriate relief.

24. This Decree shall be dissolved three (3) months after Rhode Island submits its final report under paragraphs 19 and 20, unless either the United States has or the private Plaintiffs have given Rhode Island notice of an alleged violation pursuant to paragraph 23 which has not been resolved, or either moves the Court for good cause shown to extend this Decree. Such motion shall be made upon forty-five days notice to all other parties.

Entered and Ordered this 6th day of September, 1985.

## APPENDIX AA–1
*Letter to Attending Physician*

Dear Dr. _____:

The State of Rhode Island has been ordered by the United States District Court for the District of Rhode Island to recompute the benefits payable to women under the state-administered Temporary Disability Insurance program for pregnancy-related disabilities which they suffered during the period from April 29, 1979, through August 1, 1981.

The procedure established by the Court for recomputing such claims requires the State to obtain a completed TDI–3 form from the physician who attended each woman during the period of her pregnancy-related disability. Our records indicate that the following women were under your care for pregnancy-related disabilities during the relevant time period:

[first name of women and DOB of child]

The Court's order requires that a TDI–3 form be completed for each of the above-named women and returned to the State within thirty days (30) of the date of this letter. A sufficient number of TDI–3 forms have been enclosed.

It is only necessary for you to: (1) complete items 1–5 and 17; and (2) sign and date a TDI–3 form for each of these women. In completing Item 17, please include any period of disability which preceded the date the pregnancy was terminated, as well as any period of disability from work subsequent to that date.

Sincerely,

_____

Appropriate State Official

Enclosures

APPENDIX AA-2

**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**
**DEPARTMENT OF EMPLOYMENT SECURITY**
**TEMPORARY DISABILITY INSURANCE DIVISION**

HOSPITALIZATION
ADM
DISC.

1. ATTENDING PHYSICIAN AND ADDRESS

2. SOCIAL SECURITY NUMBER    AGE

3. NAME OF PATIENT

4. ADDRESS

5. CITY    STATE

6. IS INJURY OR ILLNESS WORK-CONNECTED    ☐ YES ☐ NO

7. DATE OF INJURY _____ , DATE OF ONSET OF WORK-CONNECTED ILLNESS

8. YOUR COMPLETE DIAGNOSIS

9. OPERATION PERFORMED _____ DATE _____ TO BE PERFORMED _____ DATE

10. TYPE OF OPERATION

11. ABLE TO WORK PENDING OPERATION ☐ YES ☐ NO    12. IS PATIENT PREGNANT ☐ YES ☐ NO (ACTUAL/EXPECTED) DELIVERY DATE

HOSPITAL

13. IF ABORTION OR MISCARRIAGE, ENTER DATE

14. IS PATIENT CAPABLE OF SIGNING CHECKS AND DOCUMENTS    ☐ YES ☐ NO

15. SPECIFY TESTS GIVEN, IF ANY, AND RESULTS OBTAINED

16. FIRST EXAMINATION FOR CURRENT ILLNESS OR INJURY _____ DATE _____ MOST RECENT EXAM _____ DATE

17. FROM THIS DATE _____ PATIENT WILL BE UNABLE TO WORK FOR _____ DAYS _____ WEEKS

SIGNATURE _____ DEGREE _____ DATE

PLEASE FOLD FORM IN THREE AND RETURN IMMEDIATELY TO AVOID DELAY IN BENEFIT PAYMENTS

TO OPEN — TEAR ALONG PERFORATION
USE THUMB NOTCH TO REMOVE CONTENTS

## APPENDIX BB-1

### *Letter to Each Woman*

PLEASE READ THIS LETTER CAREFULLY. IT MAY AFFECT YOUR LEGAL RIGHTS.

Dear Ms. _____:

The State of Rhode Island Department of Employment Security has been ordered by the United States District Court for the District of Rhode Island to recompute the temporary disability insurance benefits for all women who received lump sum maternity benefits for pregnancy-related disabilities from April 29, 1979, to August 1, 1981. Under the new computation, these women will be entitled to benefits for the period they were actually disabled by pregnancy, childbirth, and related medical conditions. Instead of a lump sum payment, their benefits will be calculated using the formula that was used for all other employees who were unemployed due to a sickness. In addition, any woman who had reduced benefits for a second illness in the same benefit year in which she received the lump sum maternity payment, because of failure to give her waiting period credit for the pregnancy-related disability, will recoup that reduction in her benefits. Finally, interest equal to the adjusted prime rate used by the United States Internal Revenue Service will be paid for any additional amounts which are due each woman under these new computations.

The Department of Employment Security's records indicate that you gave birth to a child on [date from TDI-1 form]. In recomputing your benefits, the State [obtained certification from your physician that you were disabled by pregnancy during the period from _____ to _____. *OR* attempted to obtain certification from your physician regarding the period during which you were physically disabled from work but was unable to do so and therefore assumed that you were disabled from working for a period of (add figure calculated pursuant to paragraph 5) _____ weeks. OR (in cases where the state believes, based on appropriate supporting materials, that a woman's period of disability was shorter) ... was unable to do so but believes, based on its records, that you were disabled for a period of _____ weeks.] According to the State's records you are due the following amount, OR are due no additional benefits, based on the following computations:

(Sample Figures—Substitute Actual Figures For Each Woman)

A.  $1000.00 – benefits under general formula
   −$ 250.00 – lump sum payment received
    $ 750.00 – difference due you
   +$ 141.07 – interest on above amount
    $ 891.07 – total due you

B.  $ 100.00 – reduction in benefits due to failure to credit waiting period
    $  18.81 – interest on above amount
    $ 118.81 – total due you

C.  $891.07 – total due you under A
    $118.81 – total due you under B
   $1009.88 – grand total due you
   −$200.00 – deductions for state and local taxes and Social Security (FICA)
    $809.00 – TOTAL OWED YOU

---

If you wish to receive your check for the above amount, please sign and return the enclosed "Release", and a check will be mailed to you.

If, however, the State was unable to obtain certification from your physician, and you believe you are entitled to a greater amount than that shown above because

your actual period of disability was longer than _____ weeks, you must submit other documentation (*e.g.*, work attendance records, hospital records, lab reports, etc.) to substantiate your claim.

You may also be entitled to additional compensation if, at the time of your pregnancy-related disability, you had children (other than the child to whom you had just given birth), including adopted and stepchildren, under the age of 18 years or over the age of 18 but incapable of earning wages because of mental or physical incapacity.

If you believe that you are entitled to additional compensation for either of the above reasons you must complete the attached "Questionnaire". *In order to be eligible to receive an amount larger that [fill in "TOTAL OWED YOU"] the completed form and any additional required documentation must be submitted to the State within forty-five days of receipt of this letter.* It should be mailed to [name and address of State official]. Please retain a copy of this documentation for your records.

The State will analyze your submission and determine whether you are entitled to a larger amount or to the amount set forth above. You will then be notified of the State's final determination.

If you believe the State's determination to be in error you will be allowed to file an appeal. Attorneys for the United States Department of Justice, the private plaintiff, and the State will then attempt to reach a joint resolution of each appeal. If they are unable to agree, the appeal will be submitted to the Court for resolution.

Sincerely, yours,

_____

Appropriate State
Official

## APPENDIX BB–2
### RELEASE

Upon receipt of the sum of a check for [sum spelled out] Dollars ($_____), I, [full name of claimant], for myself and for my heirs, executors, administrators and assigns, will release and discharge the Rhode Island Department of Employment Security; Mary C. Hackett, Director of the Rhode Island Department of Employment Security; and the State of Rhode Island of and from all legal, equitable or administrative claims or causes of action arising out of alleged discrimination on the basis of sex in the payment of temporary disability insurance benefits for pregnancy-related disabilities from April 29, 1979 until August 1, 1981, by endorsing the check and presenting it for payment within thirty days of receipt. The check should be made payable to _____ [print your name] and mailed to the address shown below.

_____
SIGNATURE

_____
DATE

_____

_____

ADDRESS (Please Print)

## APPENDIX BB–3

### QUESTIONNAIRE

(Please Print Clearly)

NAME: _____

ADDRESS: _____

_____

_____

SOCIAL SECURITY NO.: _____

**524**

TELEPHONE: _____ (WORK)

_____ (HOME)

DATE OF BIRTH OF CHILD:                    _____
[Enter date shown in attached
  letter unless it is incorrect]

I. PERIOD OF DISABILITY

Complete only if no certification was obtained from your physician as to the period you were physically disabled from work due to pregnancy <u>and</u> you were disabled for a period longer than stated in the letter:

A. DATES, IF ANY, THAT YOU MISSED
   WORK WHILE PREGNANT DUE TO A DIS-
   ABILITY ASSOCIATED WITH YOUR
   PREGNANCY:                              _____

B. DATES THAT YOU MISSED WORK FOL-
   LOWING TERMINATION OF YOUR PREG-
   NANCY DUE TO A DISABILITY ASSO-
   CIATED WITH YOUR PREGNANCY:            _____

NOTE: if you believe your period of disability was longer than the period shown in the attached letter you must also submit documentation (<u>e.g.</u>, work attendance records, hospital records, lab reports, etc.) to substantiate your claim.

II. DEPENDENCY BENEFITS

Complete the following questions only if you believe you may be entitled to such benefits:

A. How many children, including adopted and stepchildren, under 18 years of age and children 18 years of age or over incapable of earning any wages because of mental or physical incapacity were dependent on you during the time you were disabled by the pregnancy in question.

                    No. of such children _____

B. At the time did anyone else
   contribute more than 50% of
   the support of these children?        Yes ____ No ____

C. Has any other person claimed
   these children as dependents
   under the R.I.Temporary Dis-
   ability Insurance Act?                 Yes ____ No ____

   If "Yes" list name, address,
   and S.S.No. of person who
   claimed these children:            Name _____

                                   Address _____

                                           _____

                                   S.S. No. _____

D. Did all of these children
   live with you at the time
   you were disabled by the
   pregnancy in question?                 Yes ____ No ____

   If, "No", list the name
   and address of the person
   with whom the children re-
   sided:

Name _____

Address _____

_____

E. List dependents claimed below:

| Name | Date of Birth of Child | If child is 18 years of age or over indicate type of physical or mental incapacity |
|---|---|---|
| | | |
| | | |
| | | |

I hereby claim dependents' allowance for the above named children and I certify that the above contains a listing of the children who were dependent upon me at the time of the pregnancy-related disability in question. I understand that any false claim made by me is punishable by law.

_____     _____
Signature of Claimant                              Date

_____

## APPENDIX C

### *Notification of Determination*

Dear Ms. _____:

As you know, the State of Rhode Island has been ordered by the United States District Court for the District of Rhode Island to recompute the temporary disability insurance benefits due you for the pregnancy-related disability you suffered during the period from April 29, 1979, to August 1, 1981. The letter previously sent to you contained State's computation of the amount it believed to be owed to you. A copy of that letter is enclosed.

You subsequently submitted documentation which you assert entitles you to a larger amount. [The Department of Employment Security has determined that you are not entitled to an amount greater than the "net amount due you" set forth in the enclosed letter. The reason for this is (explain in detail). *or* Based on the documentation you submitted, the Department of Employment Security has determined that you are entitled to a larger amount of compensation. Our calculations are as fol-

lows: (use format contained on p. 2 of Appendix A).]

If you for any reason disagree with the net amount which we have determined to be due you, you may file an appeal by signing the enclosed "Appeal Statement" and forwarding it to the address indicated on the statement. <u>The statement must be mailed within forty-five days of the date of this letter.</u>

Upon receipt of your appeal statement, Rhode Island is required to contact the attorneys for the Department of Justice and the private plaintiff who will, together with the attorney for the State, review the documentation submitted by you and attempt to reach a joint resolution of the matter. If the attorneys are unable to agree the matter will be submitted to the United States District Court for resolution. Once a resolution is reached, you will be notified of the results of your appeal.

Sincerely,

_____
Appropriate State
Official

Enclosures

APPENDIX D

Appeal Statement

[Please Print Clearly]

NAME: ——————————————————

ADDRESS: ——————————————————

——————————————————

DAYTIME TELEPHONE NO. ——————————

The State of Rhode Island has notified me that it has determined that I am

entitled to: ——————————————————————————————— .

I believe that the State's computation is in error because

[ Please state in detail your reasons ]:

———————————————        ———————————————
Date                              Signature

Return this form within forty-five days to:

[NAME AND ADDRESS OF APPROPRIATE STATE OFFICIAL]