Paul F. CARANCI, Margie M. Caranci, Roseanne Ehrenberg, Scott Ehrenberg, Dariusz Dziadkiewicz, and Carl Durden, on behalf of themselves, persons claiming under their health plans, and all persons similarly situated, Plaintiffs,

v.

BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, Defendant.

No. 96–275–L.

United States District Court, D. Rhode Island.

June 1, 2000.

Amato A. DeLuca, DeLuca & Weizenbaum, Ltd., Providence, RI, Peter N. Wasylyk, Providence, RI, Wood Roberson Foster, Jr., Jordan Matthew Lewis, Siegel, Brill, Greupner & Duffy, Milwaukee, WI, for Plaintiffs.

Steven E. Snow, Brian Clifford Newberry, Partridge, Snow & Hahn, Providence, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, District Judge.

This case is before the Court on objections by both parties to a Report and Recommendation issued by United States Magistrate Judge Robert W. Lovegreen and an objection by Blue Cross and Blue Shield of Rhode Island ("defendant") to a subsequent bench order issued by Judge Lovegreen granting plaintiffs' motion to amend. For the reasons set forth below, this Court adopts the Report and Recommendation insofar as it concludes that the health plan plaintiffs Paul and Margie Caranci ("the Caranci plaintiffs") seek to enforce in this case is not governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 et seq. Consequently, Counts I and II of the Third Amended Complaint, insofar as they are brought by the Caranci plaintiffs on behalf of three proposed subclasses of similarly situated individuals, are dismissed for lack of subject matter jurisdiction. This Court further adopts Judge Lovegreen's Report and Recommendation insofar as it recommends certification of the fourth proposed subclass with plaintiffs Dariusz Dziadkiewicz and Carl Durden as class representatives. However, this Court reverses Judge Lovegreen's bench order granting plaintiffs' motion to amend the complaint to add Karen Tancredi ("Tancredi") as a party plaintiff.

## I. Background

The six named plaintiffs filed this proposed class action on May 15, 1996, alleging that each is, or was at one time, a member or beneficiary of an ERISA-governed health plan administered by defendant and that defendant's methods for administering these plans violate ERISA. Specifically, the Third Amended Complaint alleges two counts: one pursuant to 29 U.S.C. § 1132(a)(1)(B) to enforce the terms of the health plans and one pursuant to 29 U.S.C. § 1132(a)(3) alleging a breach of fiduciary duty. The two counts are brought by the named plaintiffs on behalf of a proposed class, which includes all individuals (1) currently or formerly covered by an employee welfare benefit plan subject to ERISA and underwritten or administered by defendant between June 1, 1986 and the date of the complaint and (2) falling into one of the four proposed subclasses defined in the complaint. The complaint thus is properly viewed as alleging eight counts—two counts for each of four subclasses.

The first subclass, referred to as the "Participating Provider Overcharge Subclass," allegedly consists of individuals who were or are covered by a "Classic Blue" plan and who received services from a provider they believed was a "participating provider," but were credited by defendant for services rendered by a "non-participating" provider. The complaint alleges that, as a result of defendant's actions, the individuals bore responsibility for paying the difference between the amount paid by defendant and the amount charged by the service provider, whereas there would have been no such difference had the individuals been credited for services rendered by a participating provider.

The second subclass, referred to as the "Partial Claim Processing Subclass," allegedly consists of individuals who were or are covered by a "Classic Blue" plan and who submitted valid claims for processing to defendant, which claims were not paid in full because the claims were processed (and partially paid or disallowed) only under the

"Covered Healthcare Services" portion of the contract without being given further consideration under the "Major Medical" portion of the contract (or vice versa). The complaint alleges that, as a result of this partial processing, the individuals bore responsibility for partial or full payment of these claims, whereas the claims would have been partially or fully paid by defendant had the claims been considered under both provisions, as allegedly required by the contract.

The third subclass, referred to as the "Deductible Subclass," allegedly consists of individuals who were or are covered by a "Classic Blue" plan and who made deductible payments for services covered under the "Major Medical" portion of the "Classic Blue" plan, but were credited for amounts less than the amount they actually paid toward their annual deductible requirements because defendant credited only the amount that it would have paid for the service. The complaint alleges that, as a result of defendant's actions, individuals were required to pay significantly more than the stated amount of the deductible before meeting the deductible requirements.

The fourth subclass, referred to as the "Percentage Copayment Subclass," allegedly consists of individuals who were or are covered by "HealthMate" or "HealthMate 2000" plans, or who participated in any "SCRIP" plan involving percentage copayments, and who were required to make percentage copayments for covered health services or prescription drug purchases, in which the individual's share of the copayment was calculated as a percentage of the provider's charge, or undiscounted price, and defendant's share of the copayment was calculated from a discounted price. The complaint alleges that, as a result of defendant's actions, individuals paid higher copayments for health services and prescription drug purchases than were required under the contract.

The Caranci plaintiffs are named as representatives for the first three subclasses, as the complaint alleges that Paul Caranci participated at material times in an ERISA-governed plan through his employer, the Rhode Island Solid Waste Management Cor-

poration, now called the Rhode Island Resource Recovery Corporation ("the RIRRC"), which was administered by defendant, having coverage from 1988 through 1995 under the Classic Blue program, and that Margie Caranci was a beneficiary under that plan. Margie Caranci, Roseanne and Scott Ehrenberg ("the Ehrenberg plaintiffs"), Dariusz Dziadkiewicz and Carl Durden are named as representatives for the fourth subclass, as the complaint alleges that each at some time participated in ERISA-governed HealthMate and/or SCRIP plans.

On July 11, 1996, plaintiffs filed a motion for class certification of all four subclasses, which defendant opposed. The Court permitted limited discovery on the class certification issues and referred the motion to Magistrate Judge Lovegreen.

On August 19, 1999, following a hearing, Judge Lovegreen issued a detailed Report and Recommendation. The Report recommended that none of the first three subclasses be certified because the named subclass representatives, the Caranci plaintiffs, lack standing to bring suit. Specifically, Magistrate Judge Lovegreen found that the Classic Blue plan of which Paul Caranci was a member and Margie Caranci was a beneficiary was a "governmental plan" as defined in ERISA, and therefore exempt from ERISA pursuant to 29 U.S.C. § 1003(b)(1). The Report also recommended that the fourth proposed subclass be certified, with plaintiffs Dariusz Dziadkiewicz and Carl Durden as representatives. Specifically, Magistrate Judge Lovegreen found that the fourth proposed subclass meets the Federal Rule of Civil Procedure 23 requirements for class certification. However, Magistrate Judge Lovegreen concluded that the Ehrenberg plaintiffs lack standing to bring suit on behalf of the fourth subclass because they were not "participants," "beneficiaries," or "fiduciaries" of their ERISA plan, as required by the ERISA provisions under which the suit was brought. *See* 29 U.S.C. § 1132(a)(1)(b) and 1132(a)(3) (1994). Magistrate Judge Lovegreen also concluded that Margie Caranci is an inadequate class representative, mainly because she exhibited in her deposition a lack of understanding about the case.

Both parties objected in part to the Report and Recommendation. Plaintiffs objected only to ·the recommendation regarding the standing of the Caranci plaintiffs to bring suit on behalf of themselves and other individuals in the first three subclasses. Defendant objected to the recommendation to certify the fourth subclass. On October 7, 1999, this Court heard oral arguments addressing the parties' objections and took the matter under advisement.

In the meantime, on September 16, 1999, plaintiffs filed a motion under Federal Rule of Civil Procedure 15 to amend the complaint to add a new plaintiff, Tancredi. According to her affidavit, Tancredi participated in an ERISA-governed plan administered by defendant, having coverage under the Classic Blue program, from 1981 through June 1, 1995. Plaintiffs' action was admittedly taken to establish representation for the first three proposed subclasses in the event that this Court agreed with Judge Lovegreen that the Caranci plaintiffs lack standing and consequently adopted the recommendation to deny certification. Defendant opposed the motion, essentially arguing that plaintiffs were not permitted to breathe new life into their lawsuit in this manner. The matter was referred to Judge Lovegreen, who granted the motion from the bench on January 31, 2000.

Defendant filed a timely objection to that order. On February 25, 2000, this Court held a hearing to address defendant's objection and the Court took that matter under advisement.

Because of the interdependence of the two matters, this Court will now consider the parties' objections to both actions taken by Magistrate Judge Lovegreen.

II. Standard of Review

A motion to certify a class may be referred to a United States Magistrate Judge for initial findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) (1994); Fed.R.Civ.P. 72(b). If a timely objection to the Magistrate Judge's recommendation is made, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C) (1994). *See also* Fed.R.Civ.P. 72(b)(recommendations on dispositive motions are reviewed *de novo* ). Therefore, this Court will review Magistrate Judge Lovegreen's recommendations regarding class certification *de novo.*

A motion to amend a complaint, however, typically can be referred to a United States Magistrate Judge for determination and en-· try of an order when appropriate. *See* 28 U.S.C. § 636(b)(1)(A) (1994); Fed.R.Civ.P. 72(a). If a timely objection to the determination is made, a district court may modify or set aside the Magistrate Judge's order only if it is shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) (1994); Fed.R.Civ.P. 72(a)(orders entered on nondispositive motions may be modified or set aside only if shown to be "clearly erroneous or contrary to law"). Therefore, this Court will review the order granting the motion to amend under the "clearly erroneous or contrary to law" standard.[1]

---

1. The Court notes, however, that, although the motion to amend was treated as a referral for determination under 28 U.S.C. § 636(b)(1)(A) and the parties have not argued otherwise, it can be argued that the appropriate standard of review for the Magistrate Judge's order is *de novo.* 28 U.S.C. § 636(b)(1)(A) lists only eight matters, and a motion to amend is not one of them, that may not be determined initially by an order of a Magistrate Judge and which therefore require *de novo* review. *See* 28 U.S.C. § 636(b)(1)(A) (1994). However, Fed.R.Civ.P. 72 distinguishes between matters that may be determined by a Magistrate Judge, which require review under the more deferential standard, and matters that require findings and recommendations, which require *de novo* review, on the basis of whether the matter is "dispositive" or "nondispositive." *See* Fed.R.Civ.P. 72. Several courts, including this Court, have held that this distinction implies that a matter not listed in 28 U.S.C. § 636(b)(1)(A) may nonetheless require *de novo* review, if its effect is dispositive on a claim or defense of a party. *See, e.g., Allendale Mut. Ins. Co. v. Rutherford,* 178 F.R.D. 1, 2 (D.Me.1998)(Magistrate Judge's disposition of motion to amend answer to include a statute of limitations defense must be reviewed *de novo* because the matter is dispositive of a defense of a party). *See also Conetta v. National Hair Care Ctrs., Inc.,* 182 F.R.D. 403, 405–06 (D.R.I.1998)

III. The First Three Proposed Subclasses

A. Threshold Issues

■ This Court agrees with Magistrate Judge Lovegreen that the pivotal question in this case, with regard to the Caranci plaintiffs' representation of the first three proposed subclasses, is whether the plan under which the Caranci plaintiffs were covered was governed by ERISA. Magistrate Judge Lovegreen, in the context of a motion for class certification, characterized the issue as whether the Caranci plaintiffs have standing to bring suit. As Magistrate Judge Lovegreen recognized, a finding that the named plaintiffs possess standing to sue is a prerequisite to a determination of Federal Rule of Civil Procedure 23 class certification. *See In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1531 (D.Mass.1991). *See also Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (justiciability, of which standing is an aspect, "is the threshold issue in every federal case").

ERISA grants standing to sue under the provisions asserted in the two counts of the complaint to "participants," "beneficiaries," and "fiduciaries," as those terms are defined in the statute, of the ERISA plan at issue in the suit. *See* 29 U.S.C. § 1132(a)(1)(b) and 1132(a)(3) (1994). Of course, even if the requirements of the statute are met, the plaintiff must also satisfy the standing requirements contained in Article III of the Constitution. *See Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)("In no event ... may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself' ... that is likely to be redressed if the requested relief is granted.") (citations omitted). Before this standing issue can be addressed, however, an initial question is whether the plan involved is an ERISA-gov-

erned plan, thus rendering the claims properly brought under ERISA. *See, e.g., Bellisario v. Lone Star Life Ins.*, 871 F.Supp. 374, 376–380 (C.D.Ca.1994) (analyzing first whether the plan at issue was governed by ERISA, then, upon concluding that it was, analyzing whether the plaintiffs had standing under ERISA to bring suit).

This initial question is really one of subject matter jurisdiction, which, of course, is also a threshold issue in any federal action. *See Prou v. U.S.*, 199 F.3d 37, 45 (1st Cir. 1999)("The requirement of subject-matter jurisdiction relates directly to the constitutional power of a federal court to entertain a cause of action. For this reason, the question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue even though the parties have failed to raise it."). Although in the ERISA context, as well as in the constitutional sense, the terms "standing" and "subject matter jurisdiction" are often used interchangeably, "the concepts, though interrelated, are separate and distinct." James F. Jorden et al., Handbook on ERISA Litigation § 1.03, at 1–19 (2nd ed.2000). Specifically, the complaint asserts the existence of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because the claims are brought under ERISA. If the Caranci plaintiffs' plan is not an ERISA plan, federal question jurisdiction is lacking with respect to the claims seeking to enforce that plan. If it is an ERISA plan, the Court may well need to consider additional threshold issues such as whether the Caranci plaintiffs were participants, beneficiaries, or fiduciaries of the plan such that they have standing to bring suit, and then consider whether the proposed subclass meets the requirements of Federal Rule of Civil Procedure 23. This Court will therefore first determine whether the Caranci plaintiffs' plan was governed by ERISA.

(discussing standards of review for dispositive and nondispositive motions). As clarified below, plaintiff's motion to amend in this case may be considered dispositive of the claims of the first three proposed subclasses, because if Tancredi is not permitted to be added as a party plaintiff, those claims have no chance of being asserted in the current litigation. Under this view, the appropriate standard of review of the Magistrate

Judge's order is *de novo*. *See* Fed.R.Civ.P. 72(b). The distinction, however, is irrelevant in this case, as this Court concludes that Magistrate Judge Lovegreen's order granting plaintiffs' motion to amend must be reversed under either standard. The order is based on an interpretation of the law, rather than on any underlying facts, which is given no deference under either standard.

### B. Application of the "Governmental Plan" Exemption

Title I of ERISA, under which plaintiffs bring this action, does not apply to an employee benefit plan "if ... such plan is a governmental plan (as defined in [this Title].)" 29 U.S.C. § 1003(b)(1) (1994). A governmental plan is defined in Title I as any plan that is "established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32) (1994). Since the health plan under which the Caranci plaintiffs were covered during the relevant time periods was established by the RIRRC, the question in this case is whether the RIRRC is a political subdivision of the State of Rhode Island, or an agency or instrumentality of either the State of Rhode Island or a political subdivision thereof.

The terms "political subdivision" and "agency or instrumentality" are not explicitly defined in the statute. Because ERISA is a federal statute, the meaning of those terms must be determined by reference to federal law. *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 915 (2nd Cir.1987), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1112, 99 L.Ed.2d 273 (1988). The First Circuit has yet to apply these terms to determine whether a particular plan falls under the exemption. Courts that have done so have used varying factors to assist in their analysis. Magistrate Judge Lovegreen focused on three extensively-reasoned circuit court cases. This Court will do the same.

In *Rose, id.* at 912, the plaintiff sought survivorship benefits, alleging that her late husband's Long Island Railroad ("LIRR") pension plan violated Title I of ERISA. The issue in the case was whether the pension plan was a "governmental plan" exempt from ERISA. *See id.* at 914. Noting that all of the LIRR's stock was held by the Metropolitan Transportation Authority ("MTA"), the Court employed a two-step analysis. *See id.* at 915. First, it considered whether the MTA was a "political subdivision" of the State of New York. *See id.* In concluding that it was, the Court utilized the criteria adopted in *NLRB v. Natural Gas Util. Dist. of Hawkins County, Ten.*, 402 U.S. 600, 604–605, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971), to define the term "political subdivision" under the National Labor Relations Act. Under that test, an entity is a political subdivision if it is either " '(1) created directly by the state, so as to constitute [a department] or [an administrative arm] of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.' " *Id.* at 916 (quoting *Hawkins County*, 402 U.S. at 604–605, 91 S.Ct. 1746). The Court also considered additional criteria, including whether the MTA held any sovereign powers such as the power of eminent domain and the police power, *see id.* (citing *Commissioner of Internal Revenue v. Shamberg's Estate*, 144 F.2d 998 (2nd Cir.1944) and *Commissioner of Internal Revenue v. White's Estate*, 144 F.2d 1019 (2nd Cir.1944)), and whether the entity was tax-exempt. *See id.* at 917.

Next, the Court considered whether the LIRR was an "agency or instrumentality" of the MTA. *See id.* at 917. To answer this question, the Court relied upon the Internal Revenue Service's ("IRS") interpretation of 26 U.S.C. § 414(d), which contains a definition of governmental plan nearly identical to the definition in Title I of ERISA. *See id.* at 918. The Court reasoned that this deference was appropriate given that the IRS is one of the agencies charged with administering ERISA. *See id.* Thus, the Court applied the following six-factor test found in IRS Revenue Ruling 57–128, to conclude that the LIRR was an "agency or instrumentality" of the MTA: (1) whether the entity is used for a governmental purpose and performs a governmental function; (2) whether performance of the entity's function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the entity is vested in public authority or authorities; (5) whether express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such

authority exists; and (6) the degree of financial autonomy and the source of its operating funds. *See id.*

In *Shannon v. United Servs. Auto. Assoc.,* 965 F.2d 542, 548–552 (7th Cir.1992), *cert. denied,* 506 U.S. 1028, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992), the Seventh Circuit engaged in a lengthy analysis of the Title I governmental plan exemption, but did not distinguish between the terms "political subdivision" and "agency or instrumentality." Instead, citing *Rose,* 828 F.2d at 915, the Court applied only the *Hawkins County* two-prong test to conclude that the entity in question was not a "subdivision, agency or instrumentality" of the City of West Allis, Wisconsin and the plan in question was, therefore, not a governmental plan exempt from Title I of ERISA. *See id.*

In *Alley v. Resolution Trust Corp.,* 984 F.2d 1201, 1205 (D.C.Cir.1993), then Judge Ruth Bader Ginsburg considered whether the defunct Federal Asset Disposition Association ("FADA") was an agency or instrumentality of the federal government, such that its employee benefit policy was exempt from Title I of ERISA. In a footnote, the Court acknowledged the existence of the *Rose* six-factor test for determining whether a particular entity is a governmental agency or instrumentality and noted that "one could argue long and hard about FADA's score under the Rose test." *Id.* at n. 11. However, the Court declined to "engage in all-purpose characterization," confining itself instead to evaluating FADA's employment relationships with its employees, an area the Court considered "most relevant for ERISA purposes[.]" *Id.* at 1205–1206. The Court concluded that because FADA employees resembled private sector employees far more than they did government workers, insofar as they were outside the civil service system and were not subject to personnel rules or restrictions on salaries and benefits imposed generally on federal employees, the FADA employee benefits plan did not qualify for the governmental plan exemption in Title I of ERISA. *See id.* at 1206–1207.

The RIRRC is a public corporation in Rhode Island, created by statute, *see* R.I. Gen. Laws § 23–19–1 (1996) *et seq.,* for the purpose of "prepar[ing] and implement[ing] a plan for an integrated statewide system of solid waste management facilities which plan shall define the state's disposal needs and define the manner to meet the needs in accordance with the requirements of this chapter." R.I. Gen. Laws § 23–19–4(b) (1996). The statute provides that the RIRRC "is hereby constituted a public instrumentality and agency exercising public and essential governmental functions[.]" R.I. Gen. Laws § 23–19–6(a) (1996). The powers of the corporation are vested in nine commissioners, including the director of administration or his designee, five members to be appointed by the governor, and three members of the Rhode Island legislature, to be appointed by the leaders of the House of Representatives and the Senate. R.I. Gen. Laws § 23–19–6(c)(1) (1996). The RIRRC meets its operating expenses by charging fees for its services. R.I. Gen. Laws § 23–19–13(a)(2) (1996). However, if at any time the corporation determines that it will be unable to meet its financial obligations, it can request an appropriation from the General Assembly. R.I. Gen. Laws § 23–19–13(j)(2) (1996).

■ Given these characteristics, it is clear, as Judge Lovegreen recognized, that the RIRRC meets one, if not both of the criteria contained in the *Hawkins County* test used in *Rose* and *Shannon.* The RIRRC is administered by individuals who are responsible to public officials or to the general electorate, because all of the commissioners are either public officials or appointed by public officials. Furthermore, the RIRRC was created by the State of Rhode Island through its General Assembly and, although the statute provides that the RIRRC does not constitute "a department of the state government," R.I. Gen. Laws 23–19–6(a) (1996), it should be considered an "administrative arm" of the state government. In any case, the *Hawkins County* test requires that only one of the two elements be met, *see Shannon,* 965 F.2d at 548; therefore, following the *Shannon* Court's approach, the RIRRC is a state governmental subdivision, agency or instrumentality.

In addition to meeting the *Hawkins County* tests, the RIRRC also meets the additional criteria considered by the *Rose* Court for determining whether an entity is a political subdivision. It enjoys certain sovereign powers, including the power of eminent domain, subject to the approval of the governor, *see* R.I. Gen. Laws § 23–19–10.2 (1996), and it is exempt from state and local taxes. *See* R.I. Gen. Laws § 23–19–26 (1996). Thus, following the *Rose* Court's approach, the RIRRC is a political subdivision of the State of Rhode Island.

Finally, again as recognized by Judge Lovegreen, the RIRRC meets the six *Rose* factors for determining whether an entity is a governmental agency or instrumentality. Factors one through five are clearly met by the characteristics of the RIRRC discussed above. The sixth factor, the degree of financial autonomy and source of funds for operating expenses, is also essentially met. Although the RIRRC has some financial autonomy in that it receives its funds to meet operating expenses from the fees it charges, state funds are available to the corporation, through appropriations from the General Assembly, to meet expenses if necessary. This financial structure is not unlike those found in several departments of the Rhode Island State Government.[2] Therefore, the *Rose* test indicates that the RIRRC is an agency or instrumentality of the State of Rhode Island.

Conversely, the RIRRC's status as a governmental subdivision, agency or instrumentality is not as secure under the *Alley* test. According to Paul Caranci's affidavit, the RIRRC employees were not civil service employees and were not considered to be covered by the "state pension plan," thus indicating that the RIRRC does not qualify for the ERISA governmental plan exemption. However, *Alley* is distinguishable from the case at bar in one important aspect recognized in *Alley* itself. In *Alley*, the Court was considering whether an entity was an agency or instrumentality of the federal, as opposed to a state, government. Judge Ginsberg noted that: "Concern about protecting state authority over relations with state employees was one reason for the governmental plan exemption; a *Rose*-style test focusing broadly on the extent of governmental contacts may be more appropriate where state-affiliated entities are concerned." *Alley*, 984 F.2d at 1205–1206 n. 11 (citation omitted).

Magistrate Judge Lovegreen, after considering the points made in the discussion above, concluded that the RIRRC is a governmental agency or instrumentality. He reasoned that the *Rose* and *Hawkins County* factors deserved more weight than the *Alley* considerations, primarily because of the concerns voiced by Judge Ginsberg in *Alley* itself. This Court completely agrees with Magistrate Judge Lovegreen's analysis and adds only that the RIRRC may indeed also be a political subdivision of the State of Rhode Island. The Court, however, will consider plaintiffs' specific objections to Judge Lovegreen's conclusion. Plaintiffs raise three arguments, each of which can be disposed of with ease.

First, plaintiffs argue that the RIRRC intended that its health plan be governed by ERISA and this Court should respect that intent. Plaintiffs cite one case, *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988), to support this proposition. However, the *Kanne* Court was considering exceptions contained in 29 C.F.R. § 2510.3–1(j) (1987), which depend upon actions of the employer, *see id.* at 492–493, not the application of the governmental plan exemption, which depends instead upon the nature of the relationship between the employer and the government. Given this distinction and the analyses of the governmental plan exemption discussed above, this Court concludes that employer intent is not a proper consideration in applying the exemption.

Plaintiffs next argue that the RIRRC cannot be a governmental agency, instrumentality or political subdivision because it lacks the

---

**2.** For example, the Department of Environmental Management ("DEM") operates in a similar fashion to fund operating expenses associated with parks and recreational areas. The DEM is authorized to charge fees for the use of those areas, R.I. Gen. Laws § 47–17.1–9.1 (1993), and may additionally request appropriations from the General Assembly. R.I. Gen. Laws. § 32–1–9 (1994).

power to tax. It is certainly true that one justification for the governmental plan exemption is that a governmental entity's taxing power can be utilized to address underfunding problems of a governmental plan. *See Hightower v. Texas Hosp. Assoc.,* 65 F.3d 443, 449 (5th Cir.1995)(noting that the existence of taxing power is the reason for the governmental plan exemption, while concluding that the county that established the plan in issue did not "maintain" it, for purposes of the exemption, after the plan was assumed by a private foundation); *Rose,* 828 F.2d at 914. However, plaintiffs mistakenly assume that the entity in question must itself have the power to tax in order to be protected from underfunding in this way. In *Hightower,* 65 F.3d at 446, the entity that established the plan, a county, did indeed have the power to tax. However, it is clear that a plan is protected from underfunding if the entity in question can rely on the government's taxing power to generate funds, even if it lacks that power itself. This was exactly the case in *Rose,* 828 F.2d at 918, where the Court noted that, because the LIRR received state operating subsidies, its employees could "depend on the state's taxing power to protect their right to retirement income." In this case, the RIRRC can request an appropriation from the Rhode Island General Assembly in the event that it is unable to meet its operating expenses. Therefore, like the LIRR, it can depend upon the state's power to tax to address underfunding of its benefits plan. For this reason, this Court will not conclude that the RIRRC's inability to assess taxes itself defeats its status as a governmental subdivision, agency or instrumentality.

Finally, plaintiffs argue that this Court should apply the *Alley* test to conclude that the RIRRC is not a governmental agency, instrumentality or political subdivision, because that test is more consistent with the "totality of the circumstances" approach used by the First Circuit to resolve various ERISA issues. Plaintiffs cite a long list of cases involving other ERISA issues to support the proposition that such an approach should be utilized. This Court agrees that a totality of circumstances approach is appropriate to resolve this issue, but disagrees that applying the *Alley* test is the only way

to utilize such an approach. In fact, Magistrate Judge Lovegreen engaged in just such an analysis when he considered the various factors of the *Rose, Shannon* and *Alley* tests and the relative weight that should be given to each to conclude that the RIRRC is an agency or instrumentality of the State of Rhode Island. This Court adopts that analysis, including Judge Lovegreen's conclusion that the *Alley* test is inapplicable to the case at bar.

Therefore, this Court adopts Magistrate Judge Lovegreen's conclusion that the plan under which the Caranci plaintiffs were covered is exempt from ERISA under the governmental plan exemption.

### C. Subject Matter Jurisdiction

Because the plan under which the Caranci plaintiffs were covered is not governed by ERISA, this Court lacks federal question jurisdiction over the two counts as asserted by the Caranci plaintiffs on behalf of the first three subclasses. These claims are properly viewed as state law claims for breach of contract and breach of fiduciary duty.

The Third Amended Complaint, however, asserts that there is discretionary supplemental jurisdiction over any claims that do not involve federal questions. There is no doubt that federal question jurisdiction exists with regard to the two counts as asserted by the representatives of the fourth proposed subclass. Therefore, if the claims of the Caranci plaintiffs on behalf of the first three subclasses meet the requirements of supplemental jurisdiction, the Caranci plaintiffs' claims may remain in this Court although raising only state law issues.

The supplemental jurisdiction statute provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (1994). Supplemental jurisdiction extends to pendent parties as

well as pendent claims. *See id.* ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."). This Court has power to hear both state and federal claims if they all would ordinarily be expected to be tried in one judicial proceeding. *See Penobscot Indian Nation v. Key Bank of Me.,* 112 F.3d 538, 563–64 (1st Cir.1997); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 79 F.3d 182, 190 (1st Cir.1996). In particular, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1175 (1st Cir. 1995).

■ In this case, it is clear that the claims of the first three subclasses and the claims of the fourth subclass do not "derive from a common nucleus of operative fact." Each subclass asserts different factual scenarios involving overpayments made by covered individuals for particular services. The first subclass asserts overpayments as a result of misdesignation of participating providers, the second asserts overpayments because of partial processing of claims, the third asserts overpayments because of miscrediting of deductible payments and the fourth asserts overpayments because of miscalculation of percentage copayments. Indeed, the fourth subclass asserts violations of two plans that are different from the plan at issue in the claims asserted by the first three subclasses. There are virtually no overlapping facts between these claims except for the fact that they are made against the same defendant. The claims as asserted by "subclasses" could have easily been brought as four separate class actions and would not ordinarily be expected to be consolidated into one judicial proceeding. Therefore, this is not an appropriate case for the exercise of supplemental jurisdiction over the Caranci plaintiffs' claims.

There is no suggestion that diversity jurisdiction is applicable.

Without federal question, diversity or supplemental jurisdiction, this Court lacks subject matter jurisdiction over the two counts contained in the Third Amended Complaint, to the extent that they are asserted by the Caranci plaintiffs on behalf of the first three proposed subclasses. Therefore, those claims must be dismissed. *See Sanderson, Thompson, Ratledge and Zimny v. AWACS, Inc.,* 958 F.Supp. 947, 962 (D.Del.1997)("Given the fact that prior to certification of a plaintiff class, the only plaintiff before the court is the representative party, it necessarily follows that a court which does not possess jurisdiction over the claims of this party must dismiss the case for want of jurisdiction."). The only remaining claims, therefore, are Counts I and II as brought by the plaintiffs representing the fourth proposed subclass.

### D. Plaintiffs' Motion to Amend

This conclusion paints plaintiffs' motion to add Tancredi as a plaintiff in a whole new light. In their briefs and at oral argument, the parties spend much time arguing over whether plaintiffs' motion is properly characterized as a Rule 15 motion to amend or a Rule 24 motion to intervene. The Court first notes that Federal Rule of Civil Procedure 21 is the appropriate rule to apply to a motion by a party to add or drop parties. *See* Fed.R.Civ.P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.").

■ However, it should be clear from the above discussion that the characterization of the motion is irrelevant, as the Court is without power to take any further action regarding the claims lacking subject matter jurisdiction. If the claims of the four proposed subclasses had indeed been brought as four separate actions, as discussed above, it is clear that the claims of the first three proposed subclasses could not be revived in the same litigation by Tancredi after dismissal. The fact that the litigation was instead brought as one action and that there now remain completely different claims on behalf of differently situated plaintiffs should not alter this result. According to her affidavit, Tancredi was never covered by a HealthMate or SCRIP plan; therefore, she cannot be added to the remaining litigation which as-

serts claims only on behalf of a subclass of individuals who were covered by those plans. The only purpose for adding Tancredi to the litigation as it now stands would be to revive the dismissed claims. This Court will not permit such an end-run around jurisdictional requirements.

This Court therefore reverses Magistrate Judge Lovegreen's order granting plaintiffs' motion to amend as contrary to law.

The Court notes, however, that Tancredi clearly may bring an individual action asserting the same claims alleged by the Caranci plaintiffs because the statute of limitations on her claims has been tolled since the filing of this purported class action. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353–354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)(" 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' ")(quoting *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). It is apparently an open question, however, whether the tolled statute of limitations would apply if Tancredi attempted to bring another class action. *See id.* at 354, 103 S.Ct. 2392 (If class certification is denied, "class members may choose to file *their own suits* or to intervene as plaintiffs in the pending action.")(emphasis added). This issue will be litigated when and if Tancredi attempts to do so.

### IV. Certification of the Fourth Proposed Subclass

#### A. Federal Rule of Civil Procedure 23

Federal Rule of Civil Procedure 23 provides that "[o]ne or more members of a class" may bring a suit as representative parties of the class:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

> adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

If the prerequisites of 23(a) are satisfied, an action may be maintained as a class action if, in relevant part:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b).

Defendant concedes that the numerosity requirement of Rule 23(a)(1) is met in this case. Magistrate Judge Lovegreen determined that the remaining 23(a) prerequisites were met in this case and recommended that the fourth proposed subclass be certified under either 23(b)(2) or 23(b)(3). Defendant objects on a number of grounds.

#### B. Defendant's Objections

#### 1. Individualized Questions

Defendant's first four objections raise issues that are necessarily encountered when a suit is brought, as in this case, on behalf of individuals covered under a variety of ERISA plans. None merit denial of class certification.

Defendant first argues that class certification is inappropriate because it would too be difficult to ascertain whether unnamed plaintiffs are or were, in fact, members of a plan governed by ERISA. Defendant points to the extensive litigation incurred in determining the applicability of the ERISA governmental plan exemption to the Caranci plaintiffs' plan as evidence of the difficulty this issue presents.

■ Defendant next makes a similar argument with regard to defendant's status as a fiduciary. Defendant claims it would be too

difficult to determine whether defendant is or was a fiduciary of the various plans of unnamed individuals. Under ERISA, defendant is a fiduciary of a particular plan if:

(i) [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii)[it] renders investment advice for a fee or other compensation ... or has any authority or responsibility to do so, or (iii)[it] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1994). Defendant is not a fiduciary if it performs only ministerial functions with respect to the plan. *See Santana v. Deluxe Corp.*, 920 F.Supp. 249, 256 (D.Mass.1996).

Third, defendant argues that a class action is not possible because varying standards of review may apply to the claims of unnamed plaintiffs. Specifically, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that a denial of benefits under an ERISA plan is to be reviewed *de novo*, unless the plan grants the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a court reviews for abuse of discretion. The Court also noted that, in the latter situation, where the plan fiduciary exercising the discretion operates under "a conflict of interest," this is a "factor" in determining whether discretion has been abused. *Id.* at 115, 109 S.Ct. 948. In the First Circuit, this language has been interpreted, at least in one instance, to mean that a fiduciary or administrator exercising discretion with a conflict of interest must be "reasonable." *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 57 (1st Cir.1999). Therefore, defendant argues that there may be three or more possible standards of review applicable to any one denial of benefits under any one contract.[3]

Finally, defendant argues that class certification is inappropriate because the different plans in which unnamed plaintiffs are or were enrolled utilize varying contract language regarding benefits. Therefore, defendant argues, a class determination as to whether benefits were improperly denied is impossible, because that determination necessarily depends upon an analysis of the contract under which the benefits were sought.[4]

The Court first notes that defendant's arguments essentially suggest that a class action under ERISA could never be brought by plaintiffs representing unnamed individuals in different plans. This is clearly not true. *See, e.g., Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993)(reversing denial of class certification where plaintiff sought to represent members in four different ERISA plans because the challenge was framed in terms of defendant's "general practice"). In fact, a case presenting an almost identical claim, that an ERISA plan administrator calculates percentage copayments in violation of its plans, is presently proceeding as a class action in this Court. *See Corsini v. United Healthcare Corp.*, 51 F.Supp.2d 103 (D.R.I.1999); *Corsini v. United Healthcare Corp.*, 965 F.Supp. 265 (D.R.I. 1997).

In addition, although defendant's arguments address the commonality and typicality of the named plaintiffs' claims to those of the proposed unnamed class members, defendant apparently does not argue that the requirements of Rule 23(a)(2) or 23(a)(3) are not met. Instead, defendant's argument is essentially that common issues do not predominate over the uncommon issues it cites and, because of those uncommon issues, a class action would be "unmanageable." Predominance and manageability are requirements for certification under Rule 23(b)(3). *See* Fed.R.Civ.P. 23(b)(3).

---

**3.** The Court notes, however, that defendant has failed to point to any language in any contract which would alter a *de novo* standard of review in this case.

**4.** Again, defendant has failed to point to different versions of the HealthMate plans or the SCRIP plan which contain a different method of calculating percentage copayments than the plans in the record.

As defendant recognizes, the requirements of 23(a)(2) and 23(a)(3) are met in this case. There are indeed common issues in this case: 1) Whether defendant calculates the individual's copayment percentage on one figure and its own percentage on a discounted figure and 2) if so, whether that practice violates the HealthMate, HealthMate 2000 and/or SCRIP plans; and the named plaintiffs' claims are typical of those of the potential class in that they arise from the same alleged course of conduct and are based on the same legal theory. *See* 1 Herbert B. Newberg et al., Newberg on Class Actions § 3.13, at 3–76 (3rd ed.1992) (defining typicality requirement).

As defendant also apparently recognizes, this is a classic 23(b)(2) case, where defendant's alleged actions are generally applicable to the class as a whole and injunctive relief would be appropriate if entitlement to relief is established. *See* Fed.R.Civ.P. 23(b)(2).

■ Therefore, since defendant only challenges the appropriateness of class certification under Rule 23(b)(3), its arguments fail to establish a reason for denying class certification.[5] Defendant is correct that this case may eventually require some individualized determinations. However, there is no support for the argument that engaging in these determinations will be so "unmanageable" as to warrant denial of class certification where the requirements of Rule 23 are otherwise met. *See United States v. Rhode Island Dept. of Employment Sec.*, 619 F.Supp. 509, 513 (D.R.I.1985)(almost every class action suit requires individual factual determinations). *See also Forbush*, 994 F.2d at 1106.

If and when the named plaintiffs establish entitlement to relief, the Court can then develop a procedure to further define the scope of the class and the appropriate relief, including a procedure to determine whether potential class members are or were covered by ERISA plans. If there are indeed variations of the HealthMate and/or SCRIP plans, which contain different language regarding the calculation of percentage copayments or the amount of discretion afforded to defendant, the class entitled to relief will necessarily include only those individuals covered under the same variation or variations as those of the named plaintiffs.

For the preceding reasons, this Court adopts Magistrate Judge Lovegreen's recommendation insofar as it concludes that the requirements of Rules 23(a)(2), 23(a)(3) and 23(b)(2) are met. Because certification under Rule 23(b)(2) is appropriate, this Court will not address the viability of certification under Rule 23(b)(3).

### 2. Adequate Representation

Defendant's final objection is that the adequate representation requirement of Rule 23(b)(4) is not met.

Judge Lovegreen concluded that plaintiffs Dariusz Dziadkiewicz and Carl Durden were the only viable representatives of the fourth subclass, and neither party objected to that finding. Therefore, finding no independent reason to disagree with Judge Lovegreen, this Court adopts that portion of the Report and Recommendation and analyzes the adequacy of representation with respect to those two plaintiffs.

**5.** Defendant's second argument, regarding defendant's status as a fiduciary, fails for an additional reason. Defendant's status as a fiduciary is only relevant to Count II for breach of fiduciary duty. Count I is a denial of benefits claim, which requires only that defendant be an administrator of the plan. Both Counts I and II are based on the same allegations of behavior by defendant; namely, that defendant calculates the insured's percentage copayment on the provider's charge while it calculates its own percentage on an undisclosed discounted rate. The Supreme Court has held, *see Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), and this Court has recently recognized, *see Corsini*, 51 F.Supp.2d at 106, that a fiduciary duty claim may not be brought if an action challenging the same behavior is available under the denial of benefits provision. *See also Trombley v. New England Tel. and Tel. Co.*, 89 F.Supp.2d 158, 166–167 (D.N.H.2000). Because the Third Amended Complaint does not appear to allege a breach of fiduciary duty beyond the denial of benefits in the form of overpayment due to defendant's calculation methods, Count II is likely not a viable claim. No motion for dismissal has been brought, and this Court will not dismiss the Count *sua sponte* without hearing arguments, but this Court considers the issue clear enough to analyze the class certification issue only with regard to Count I. Thus, defendant's status as a fiduciary is irrelevant.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). It also involves consideration of the "competency and conflicts of class counsel." *Id.* at 626 n. 20, 117 S.Ct. 2231. Defendant asserts three arguments in support of its position that the subclass is not adequately represented.

First, defendant argues that plaintiffs Dziadkiewicz and Durden have a conflict of interest with class members they seek to represent. Specifically, plaintiffs Dziadkiewicz and Durden are apparently not currently covered under health care plans administered by defendant, while many proposed class members still subscribe to such a plan. Defendant argues that a judgment for plaintiffs in this case will likely cause defendant to raise its health plan premiums, a result that will adversely affect those class members still covered under defendant's plans but will not affect plaintiffs Dziadkiewicz and Durden in any way. Defendant argues that this conflict renders plaintiffs Dziadkiewicz and Durden inadequate to represent the class.

A conflict that will prevent a plaintiff from meeting the adequacy requirement "must be fundamental. It must go to the specific issues in controversy." 1 Herbert B. Newberg et al., Newberg on Class Actions § 3.26, at 3–144 (3rd ed.1992). *See also Kenavan v. Empire Blue Cross & Blue Shield,* 1993 WL 128012, at *5 (S.D.N.Y. April 19, 1993)(the conflict must go to the " 'very subject matter of the litigation' ")(quoting *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736, 740 (S.D.N.Y. 1979)).

█ Magistrate Judge Lovegreen relied partially on *Kenavan* to conclude that the conflict defendant alleges does not defeat the adequacy of plaintiffs Dziadkiewicz and Durden. In *Kenavan,* the Court concluded that the risk of increased premiums did not create a conflict severe enough to defeat a plaintiff's adequacy to represent a class of individuals with different interests regarding the increase. *See id.* at *6. Defendant attempts to distinguish *Kenavan* by arguing that a premium increase by defendant would not be subject to state regulation, as would an increase by the defendant in *Kenavan.* Even if this is true, it does not render the reasoning in *Kenavan* inapplicable. While it is true that the *Kenavan* Court stated that one reason for its decision was that "any increase in defendant's premiums must be approved by state regulatory authorities", *id.,* the significance of the need for state approval was that "the relation between a damage award and a rise in premiums is not necessarily as direct as defendant posits[.]" *Id.* The same uncertainty exists in this case—a rise in premiums is not a guaranteed effect of a judgment for plaintiffs, even without the protection of state regulation. Furthermore, the Court's first reason for determining that the conflict did not defeat adequacy was that "under defendant's reasoning no class action by subscribers could ever be certified against defendant, because any recovery could result in an increase in premiums in the future." *Id.* This Court agrees with this reasoning and further agrees with Magistrate Judge Lovegreen that the potential for increased premiums is not at the heart of this litigation involving the miscalculation of percentage copayments. Consequently, this Court will not deny class certification on this basis.

█ Defendant next argues that plaintiff Carl Durden is an "unknown" and therefore his adequacy cannot be properly assessed. Defendant bases its argument on the fact that plaintiff Durden has not yet been deposed. The parties argue mostly over where to place the blame for defendant's failure to depose plaintiff Durden. However, there is in the record an affidavit of plaintiff Durden, setting forth information relevant to his ability to serve as a class representative. Defendant does not argue that any of the information which is known about plaintiff Durden precludes his service as a class representative. Furthermore, there is no authority to suggest that a court cannot make an adequacy determination based upon a plaintiff's affidavit, even absent deposition testimony by the plaintiff. Magistrate Judge Lovegreen found plaintiff Durden adequate to represent the fourth proposed subclass and this Court agrees.

Finally, defendant argues that plaintiffs' counsel is inadequate to represent the proposed class. Specifically, defendant claims that counsel is incompetent because they failed to conduct a reasonable inquiry into the viability of the claims of the named plaintiffs, in direct violation of Federal Rule of Civil Procedure 11. *See* Fed.R.Civ.P. 11. The gravamen of defendant's claim seems to be that plaintiffs' counsel did not procure and/or review a sufficient amount of documents from the named plaintiffs to ascertain that they could properly bring the claims alleged in the complaint. However, defendant provides only one specific example of how a lack of documentation led plaintiffs' counsel to allegedly misevaluate the viability of the named plaintiffs' claims.

Specifically, defendant notes that in the original and First Amended Complaint, the Ehrenberg plaintiffs were named as representatives of the now-superseded "Discount" subclass, which was essentially a combination of the "Deductible" subclass and the "Percentage Copayment" subclass contained in the Third Amended Complaint. The Ehrenberg plaintiffs, however, did not have any deductible requirements under their plan. Therefore, when the complaint was amended and the subclasses were further refined, the Ehrenberg plaintiffs were named only as representatives of the Percentage Copayment subclass, and not the Deductible subclass. Defendant argues that their inclusion in the original "Discount" subclass indicates the incompetence of plaintiff's counsel, because that subclass included claims regarding deductibles that were not assertable by the Ehrenberg plaintiffs.

It is not clear from the record at what point plaintiffs' counsel became aware that the Ehrenberg plaintiffs did not have·deductible requirements. However, even if this fact was discovered after plaintiffs filed the original complaint, this Court will not conclude that this oversight is a violation of Rule 11 or otherwise renders plaintiffs' counsel incompetent to litigate this class action. The original Discount subclass did include claims that were assertable by the Ehrenberg plaintiffs, namely the claims involving percentage copayments, even if the claims regarding deductibles were not. Furthermore, when the subclasses were further refined in the Sec-

ond Amended Complaint, the Ehrenberg plaintiffs were properly named as representatives only of the Percentage Copayment subclass. Refinement of subclasses is to be expected in complex litigation of this type, and this Court concludes that plaintiffs' counsel acted reasonably in investigating the suitability of the class representatives. *Cf. Ballan v. Upjohn Co.*, 159 F.R.D. 473, 488 (W.D.Mich.1994)(plaintiffs' counsel inadequate to prosecute class action under Rule 24(a)(4) where one of the named plaintiffs did not even exist).

Since defendant offers no further examples, it is difficult to see why failure to collect and/or review documentation alone, if in fact there was such a failure, renders plaintiffs' counsel inadequate. Magistrate Judge Lovegreen relied upon the affidavit of one of plaintiffs' attorneys, Peter N. Wasylyk, which indicates that he spent hundreds of hours ̇in pre-filing investigation including hours spent analyzing provider records, analyzing plan documents, interviewing plaintiffs and interviewing employees of defendant, to reject defendant's argument. This Court agrees that, given this extensive investigation, there has been no Rule 11 violation and plaintiffs' counsel otherwise meets the requirements of Rule 23(a)(4).

Since all of the requirements of Rule 23 are met, this Court adopts Magistrate Judge Lovegreen's recommendation to certify the fourth proposed subclass with plaintiffs Dziadkiewicz and Durden as representatives.

## V. Conclusion

For the reasons set forth above, Counts I and II, insofar as they are brought by the Caranci plaintiffs on behalf of the first three proposed subclasses, are dismissed. The fourth proposed subclass is certified (and will now be considered a class rather than a subclass) with plaintiffs Dziadkiewicz and Durden as representatives. Finally, Magistrate Judge Lovegreen's order granting plaintiffs' motion to amend the complaint to add Tancredi as a plaintiff is reversed.

It is so ordered.