DECISION
Before this Court is a motion to dismiss pursuant to Super. R. Civ. P. Rule 12(b)(1) based upon lack of subject matter jurisdiction. The movant, Defendant Greenwood Credit Union ("Greenwood"), claims Plaintiffs have failed to meet the $5,000 minimum jurisdictional amount in controversy requirement for Superior Court actions under G.L. 1956 § 8-2-14. Felicia Howard and Michael Hamel (collectively, "Plaintiffs"), individually and on behalf of a yet-to-be-certified class of persons similarly situated, filed an amended class-action complaint ("Complaint") against the Defendant seeking statutory damages and injunctive relief alleging violations of G.L. 1956 §§ 6A-9-614, 616, and 625. On an alternative basis, Defendant seeks dismissal under Super. R. Civ. P. Rule 12(b)(6), or summary judgment pursuant to Super. R. Civ. P. Rule 56, maintaining that notices sent to Plaintiffs are compliant with Rhode Island statutory law and not subject to injunctive relief.
 I Facts and Travel
On or about April 5, 2005, the Plaintiffs purchased a 1997 Dodge Dakota truck from Electra Auto Sales and Service ("Electra") located in Johnston. In connection with such *Page 2 
purchase, Plaintiffs entered into a retail installment contract ("Contract") which was secured by the vehicle and assigned to Greenwood, a financial institution located in Warwick, which provides, inter alia, financing for automobile and truck purchases. According to the terms in the Contract, the principal amount financed was $8,055, and the finance charge was $3,101.16. The Contract also noted that a payment of five dollars was made to Greenwood as a share account deposit.
By November 2005, the Plaintiffs had become delinquent in their payments to Greenwood under the Contract. Thereafter, over the period of November 21, 2005 to July 20, 2006, Greenwood sent to each of the Plaintiffs a series of letters indicating late payments and the possibility of repossession of their vehicle. On August 3, 2006, Greenwood sent each of the Plaintiffs a letter indicating that the vehicle had been repossessed due to a default under the loan and demanding the full unpaid balance of the loan in the amount of $7,4742.42. Greenwood also sent each of the Plaintiffs letters which are the subject of the instant matter. In an August 8th letter, Greenwood notified Plaintiffs of its intention to auction the repossessed vehicle. Additionally, in an August 22nd letter Greenwood informed the Plaintiffs that their deficiency balance after the sale of such vehicle totaled $6,333.08. (SOF Ex. I-J.)
Plaintiffs proceeded to file the instant action claiming that the letters Greenwood sent to Plaintiffs, which indicated the intended auction of the vehicle and the resulting deficiency balance did not comply with requirements as set forth in Article 9 of the Uniform Commercial Code ("UCC") as enacted in Rhode Island, which pertains to Secured Transactions. See § 6A-9-101 et seq. *Page 3 
 II Standard of Review
The Court is confronted with alternative motions for dismissal. First, the Defendant has challenged the Complaint based upon a lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Subject mater jurisdiction goes to the very power of a court to hear a particular type of case. Bradford Assocs. v. R.I. Div. ofPurchases, 772 A.2d 485, 488 (R.I. 2001) (citations omitted). The Superior Court of Rhode Island is a trial court of general jurisdiction which has subject-matter jurisdiction over all cases unless that jurisdiction has been conferred by statute upon another tribunal. Barone v. O'Connell, 785 A.2d 534, 535 (R.I. 2001) (citing Chase v. Bouchard, 671 A.2d 794, 796 (R.I. 1996)). In this case, however, there are various statutes which may affect this Court's jurisdiction over the Plaintiffs' claims.
Under G.L. 1956 § 8-2-13, the Superior Court has exclusive jurisdiction over issues of equity, such as requests for injunctive relief. Additionally, this Court has concurrent original jurisdiction with the district court in "actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000)." Section 8-2-14. Therefore, the Court will first consider whether Plaintiffs' request for injunctive relief to redress alleged violations of UCC notice requirements grants this Court jurisdiction as provided in § 8-2-13. Then, if necessary, the Court will consider whether the damages demanded by Plaintiffs in their Complaint for such alleged notice violations exceed the sum of $5,000.
Alternatively, Defendant requests that this Court dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It is well-settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of the complaint. See Toste Farm Corp. v. Hadbury,Inc., 798 A.2d 901, 905 (R.I. 2002) (quoting R.I. *Page 4 Employment Sec. Alliance, Local 401, S.E.I.U., AFL-CIO v. StateDep't of Employment and Training, 788 A.2d 465, 467 (R.I. 2002)). "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor." Id. (quoting Rhode Island Affiliate, ACLU v.Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). The court should grant such a motion "only when it is clear beyond a reasonable doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena v.Microsoft Corp., 796 A.2d 461, 463 (R.I. 2002).
 III Discussion
In the instant matter, Plaintiffs are seeking statutory damages and class certification under § 6A-9-625 based upon Defendant's alleged failure to comply with UCC notice requirements regarding the disposition of Plaintiffs' collateral and the explanation of the calculation of the Plaintiffs' deficiency under §§ 6A-9-614 and6A-9-616(b)(1), respectively. Plaintiffs also are seeking an injunction restraining and enjoining the Defendant from collecting any deficiency from the Plaintiffs and from continuing to use such allegedly defective notices. Additionally, Plaintiffs argue that the Defendant's counterclaim seeking $6,333.08 for amounts owed under its loan agreement with the Plaintiffs should properly be considered when determining the jurisdiction of this Court.[1] *Page 5 
According to the Defendant, Plaintiffs have improperly calculated their damages using the time-price differential formula rather than the credit service charge formula, both of which are specified in § 6A-9-625(c)(2). The time-price differential formula is a seller centered formula which applies when a seller extends credit to the buyer and charges a premium which represents the difference between the current cash price of an item and the total cost of purchasing it on credit. see Black's Law Dictionary 1620 (9th ed. 2009). However, the credit service charge formula is applicable when a third party extends credit to the buyer. Jacobs v. Healey Ford-Subaru, Inc., 1996 WL 87600
(Conn.Super. 1996) (citing 4 J. White R. Summers, UniformCommercial Code (UCC) (4th Ed. 1995) § 34-19, p. 465 n. 10). In the instant matter, the Defendant argues that under the credit service charge formula, the proper statutory formula for Plaintiffs' alleged damages, Plaintiffs fail to meet the $5,000 minimum amount in controversy requirement for actions in the Superior Court.See § 8-2-14.
 A Injunctive Relief
A threshold issue for this Court is whether Plaintiffs' request for injunctive relief to redress alleged violations of UCC notice requirements gives this Court jurisdiction under § 8-2-13. Defendant argues that since it has presented evidence to the Court that it no longer uses the allegedly defective notices referenced in the Complaint, there is no basis for injunctive relief. *Page 6 
Plaintiffs counter that in circumstances where the defendant ceases its offensive conduct only after the commencement of legal proceedings, the "court's power to grant injunctive relief survives discontinuance of the illegal conduct." United States v. W.T.Grant Co., 345 U.S. 629, 633 (1953).
As indicated supra, the Superior Court has exclusive jurisdiction over issues of equity, such as requests for injunctive relief. Section 8-2-13. The determination of whether to grant or deny equitable relief is within the sound discretion of the trial justice. Ruggieri v. City of East Providence, 593 A.2d 55, 57
(R.I. 1991). In actions for injunctive relief, the moving party must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position.Fund for Community Progress v. United Way of Southern NewEngland, 695 A.2d 517, 521 (R.I. 1997) (citing Brown v.Amaral, 460 A.2d 7, 10 (R.I. 1983); see also Rhode IslandTurnpike Bridge Authority v. Cohen, 433 A.2d 179, 182 (R.I. 1981); Coolbeth v. Berberian, 112 R.I. 558, 564, 313 A.2d 656,659 (1974). The moving party must also show that it has a reasonable likelihood of succeeding on the merits of its claim at trial.Fund for Community Progress, 695 A.2d at 521 (citing In reState Employees' Unions, 587 A.2d 919, 925 (R.I. 1991)).
In the instant matter, the Plaintiffs are requesting that this Court enjoin the Defendant from recovering any deficiency against the Plaintiffs based upon the delivery of the alleged defectives notices. Plaintiffs have also requested that this Court enjoin the Defendant from continuing to use such allegedly defective notices. Here, Plaintiffs have not presented any evidence to this Court that they are being threatened with some immediate or imminent irreparable injury. Plaintiffs' vehicle has already been repossessed and sold and a deficiency determined. The Plaintiffs do not claim that the method of sale or the actual sales process was *Page 7 
improper or defective nor do they dispute the amount of the resulting deficiency. Further, although a court's power to grant injunctive relief survives discontinuance of the illegal conduct, the moving party must satisfy the court that relief is needed and there exists some danger of recurrent violation. U.S. v. W. T.Grant Co., 345 U.S. 629, 633 (1953). Here, the Defendant has offered evidence that the form notices referenced in the Complaint are no longer used and have not been used since April 2007. (Pls' Aff. ¶ 4.) Moreover, when requesting an injunction, the moving party must persuade the court that it has no adequate remedy at law.Fund for Community Progress, 695 A.2d at 521. Inadequacy of the legal remedy may be shown when a party is entitled to damages, but the court is not capable of measuring such damages. RhodeIsland Turnpike Bridge Authority v. Cohen, 433 A.2d at 182. However, as Plaintiffs have demonstrated with their Complaint, damages are available for the noncompliance alleged on the part of Greenwood under § 6A-9-625. The Court is not satisfied that an injunction is necessary to prevent any imminent harm to the Plaintiffs. Further, there is insufficient evidence to conclude that the Plaintiffs cannot be made whole by means of money damages if they succeed in establishing violations of the UCC notice requirements. Therefore, this Court denies Plaintiffs' claim for injunctive relief.
Although equitable relief is unavailable to the Plaintiffs in this matter, this Court will not dismiss Plaintiffs' action based on lack of equity jurisdiction without considering the possibility of retaining supplemental jurisdiction over it. Pursuant to a provision of § 8-2-13 "the court may retain jurisdiction over [non-equitable] actions even though the initial action fails for want of equity jurisdiction." Chavers v. Fleet Bank (RI),N.A., 844 A.2d 666, 680 (R.I. 2004) (quoting § 8-2-13) (emphasis added). The Plaintiffs have also sought to invoke the jurisdiction of this Court under § 8-2-14, through a claim for statutory damages. As discussed supra, the Rhode *Page 8 
Island Superior Court has concurrent original jurisdiction with the district court in "actions at law in which the amount in controversy exceeds the sum of five thousand dollars ($5,000) and does not exceed ten thousand dollars ($10,000)." Section 8-2-14. Therefore, the statutory damages demanded by Plaintiffs in their Complaint must exceed the sum of $5,000 in order for this Court to have jurisdiction over the matter.
When determining whether or not plaintiffs in a class action may aggregate their claims to meet a requisite jurisdictional amount, our Supreme Court, in accord with the United States Supreme Court, has held that "when two or more plaintiffs having separate and distinct claims unite in a single suit, each demand must meet the jurisdictional amount." Park v. Ford Motor Co., 844 A.2d 687
(R.I. 2004) (quoting Carvalho v. Coletta, 457 A.2d 614, 616
(R.I. 1983)). However, "[w]hen several plaintiffs unite to enforce a single right in which they have a common and undivided interest they may collectively meet the jurisdictional amount." Carvalho v.Coletta, 457 A.2d at 616 (quoting Pinel v. Pinel,240 U.S. 594, 596 (1916)). In the instant matter, the facts indicate that the members of the class have separate and distinct claims against the Defendant. See Burns v. Massachusetts Mut. Life Ins.Co., 820 F.2d 246, 250 (8th Cir. 1987) (finding that separate and distinct interests existed where each class member had a separate insurance contract with the defendant); see alsoSellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983) ("An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased."). The statute under which the Plaintiffs are seeking damages, namely § 6A-9-625, creates distinct rights against a secured party for each debtor or consumer obligor with respect to his or her individual secured transaction. Therefore, this Court must determine whether the damages *Page 9 
demanded individually by the Plaintiffs exceed the sum of $5,000 and thus satisfy the jurisdictional amount of this Court.
 A Statutory Damages
When a creditor violates UCC Article 9, Part 6, and the collateral is consumer goods, the consumer is entitled to the greater of the consumer's actual damages or the minimum damages set out in § 6A-9-625(c)(2). Under such provision a debtor may recover damages "not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time-price differential plus 10 percent of the cash price." Section 6A-9-625. Chapter 9, which concerns secured transactions, does not include a definition or explanation of the terms "credit service charge," "principal amount," "time-price differential," or "cash price," as used in subsection (c)(2). Their construction and application is left to the court, taking into account the subsection's purpose of providing a minimum recovery in consumer-goods transactions.Id. at cmt 4. Nevertheless, as discussed supra, "the precise formula applied depends on whether the debtor received credit from the seller or a third-party financer." Davenport v.Bates, 2006 WL 3627875 fn.7 (Tenn.Ct.App. 2006) (citing Timothy R. Zinnecker, The Default Provisions of Revised Article 9 of theUniform Commercial Code: Part II, 54 Bus. Law. 1737, 1804 (1999)).
If the seller extended credit to the buyer, then the court should calculate the statutory damages based upon the time-price differential formula plus 10 percent of the cash price.Id. A time-price differential is the premium charged by a seller when instead of receiving an immediate cash payment for the goods, the seller extends credit to the buyer. Stelco Industries,Inc. v. Zander, 3 Conn.App. 306, 308-09 (1985); see alsoBlack's Law Dictionary, 1620 (9th ed. 2009). However, the credit service charge formula is appropriately used when a third party, such as a bank, provided credit to the buyer.Jacobs v. Healey Ford-Subaru, Inc., 1996 WL 87600 (Conn.Super. 1996) *Page 10 
(citing 4 J. White R. Summers, Uniform Commercial Code(UCC) (4th Ed. 1995) § 34-19, p. 465 n. 10).
In the instant matter, Plaintiffs are claiming that the transaction was not an arms length third party financing arrangement therefore, necessitating the calculation of damages under the time-price differential formula. According to the Plaintiffs, such formula is appropriate because Electra acted as an agent of Greenwood in establishing Plaintiffs' Greenwood share accounts. They point to the fact that Greenwood provided all the forms and instructions for Electra to establish the share accounts and authorized Electra to open such accounts and issue applicable signature cards. Plaintiffs claim that factual issues exist as to the extent of this agency relationship which prevent summary judgment. Defendant maintains that it was not a seller, and its only role was to provide financing to the Plaintiffs.
The three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an agreement between the parties that the principal will be in control of the undertaking. Norton v.Boyle, 767 A.2d 668, 672 (R.I. 2001). First, Electra was not responsible for determining if Greenwood would provide financing to the Plaintiffs. Paperwork would be filled out by the consumer and either faxed or electronically transmitted to Greenwood, which would ultimately determine whether or not to finance the transaction. (Pls' Dep. 13:6-24.) Additionally, the role of Greenwood was not a seller, and its sole responsibilities were to accept a credit application from Electra, decide whether or not to approve it, and fund the loan back to Electra. (Id. 37:3-5.) Moreover, the Defendant did not exercise any influence or control over Electra with respect to the price of the vehicle or any additions to the purchase such as warranties or insurance. (Id. 37:6-24.) *Page 11 
Further, it is essential to the agency relationship that the agent act primarily for the benefit of the principal. Lawrence v.Anheuser-Busch, Inc., 523 A.2d 864 (R.I. 1987). Electra may have provided and helped the Plaintiffs complete financing forms but an ultimate financing relationship benefited all parties, not simply Greenwood. Such a relationship allowed Plaintiffs to purchase the vehicle, Greenwood to earn credit service charges, and Electra to close a sale. The Defendant is correct when stating, "courts are nearly universal in finding that auto dealers are not agents of auto financing companies." Coleman v. General Motors AcceptanceCorp., 220 F.R.D. 64, (M.D.Tenn. 2004); see e.g.,Pescia v. Auburn Ford-Lincoln Mercury, Inc.,68 F.Supp.2d 1269, 1282-83 (M.D.Ala. 1999) (finding no evidence that an auto financing company asserts control over a dealer so as to be a principal of the dealer despite the fact that the financing company dictated the terms of an acceptable assignment and instructed the dealer to achieve a "hard close"); Mardis v. FordMotor Credit Co., 642 So.2d 701, 704-704 (Ala. 1994) (finding no agency relationship when a financing company exercised no influence over dealer's negotiations with its customers and had no authority over how dealer conducted its business of selling cars, despite the fact that the financing company supplied contract forms to the dealer).
Moreover, it is important to focus on the Plaintiffs' reasoning that the relationship between Electra and Greenwood created a direct rather than indirect financing relationship, which prompts a time-price differential damages formula. Even if Electra was an agent of Greenwood for the specified transaction, that would not require the time-price differential formula, which is a seller-centered formula. In relation to the subject transaction, Greenwood did not sell the car nor receive all of the funds. Greenwood was the financier and received the credit service charges from the loan. Electra remained the seller receiving the down payment and the cash purchase price of the vehicle. Therefore, Electra was not an agent of Greenwood *Page 12 
and the credit service charge formula, rather then the time-price differential formula, is appropriate in this case.
Consequently, if Plaintiffs were in fact to prove violations of Chapter 9, § 6A-9-625(c)(2) fixes their statutory damages at the sum of the "credit service charge plus 10 percent of the principal amount of the obligation." According to the Plaintiffs' Contract, the principal amount financed by the Plaintiffs was $8,055. (SOF Ex. A.) Additionally, the Contract specified an annual percentage rate of 17 percent and a finance charge of $3,101.16. Accordingly, Plaintiffs' alleged statutory damages would total $3,906.66.
In addition to damages under § 6A-9-625(b), Plaintiffs claim they are entitled to supplemental statutory damages under subsection 625(e)(5). Plaintiffs contend that deficiency notices sent to them following the sale of their vehicle were not compliant with § 6A-9-616(b)(1); and therefore, they are each entitled to a statutory damages award of $500. Plaintiffs argue that the language "in each case" in such provision is appropriately interpreted as "in each instance." Accordingly, Plaintiffs reason that since the Defendant sent allegedly noncompliant letters to each Plaintiff individually, Plaintiffs are each entitled to an award of $500. (emphasis added). Defendant counters that not only were the letters it sent to Plaintiffs subsequent to the sale of their vehicle compliant with the requirements outlined in § 6A-9-616, but also that such letters, even if noncompliant, constitute a single violation and thus only a single statutory entitlement of $500 is appropriate. Moreover, Defendant submits to the Court that it need not decide this issue given that even if Plaintiffs were each entitled to an award of supplemental damages, the sum of their alleged damages would only total $4,906.66, an amount below the jurisdictional threshold of this Court. *Page 13 
The issue presented to this Court is whether the Plaintiffs are each entitled to an award of supplemental statutory damages. Under § 6A-9-625(e), a debtor "may recover $500 in each case" from a creditor that "fails to comply with § 6A-9-616(b)(1) and whose failure is part of a pattern, or consistent with a practice, or noncompliance." Section 6A-9-616 requires the secured party in a consumer goods transaction to provide the debtor or consumer obligor with an explanation of any surplus or deficiency remaining after the disposition of the collateral. In the instant matter, the Court notes that even if the Plaintiffs were permitted to recover more than one award of supplemental statutory damages, their claim would still fall below the requisite jurisdictional amount for this Court.[2] Although it is within the power of this Court under § 8-2-13 to retain jurisdiction over such actions at law even though there is no basis for Plaintiffs' requests for injunctive relief, the Court declines to do so in this matter.See § 8-2-13. Accordingly, this Court need not address the interpretation of § 6A-9-625 nor the possibility of multiple awards of supplemental statutory damages under such provision. Therefore, this Court grants Defendant's motion to dismiss based upon lack of subject matter jurisdiction. Further, having ruled that the Court lacks the requisite subject matter jurisdiction, the Court deems it inappropriate to discuss or decide Defendant's alternative motion to dismiss predicated upon failure to state a claim.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court denies Plaintiffs' request for injunctive relief finding that Plaintiffs are not at risk of suffering immediate or imminent irreparable harm for which there is no adequate remedy at law. Consequently, Plaintiffs' Complaint does not fall within the equity *Page 14 
jurisdiction of this Court. Additionally, this Court finds that, in the instant matter, since the Defendant was a third party financier the proper statutory damages formula under § 6A-9-625 is the credit service charge formula. Therefore, Plaintiffs possible damages under such provision can only total $4,906.66, an amount below the jurisdictional threshold of this Court. Accordingly, this Court grants Defendant's motion to dismiss based upon lack of subject matter jurisdiction.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Under Super. R. Civ. P. Rule 15(a), an amended pleading is a substitute for the original pleading and supersedes it. In the instant matter, the Defendant filed an answer and counterclaim in response to the complaint originally filed in this matter. Subsequently, Plaintiffs filed an amended complaint, as to which Defendant has filed a motion to dismiss suspending its obligation to file an answer until after this Court has ruled on such motion. Super. R. Civ. P. Rule 12(d); see also 1 Robert Brydon Kent,Rhode Island Practice: Rules of Civil Procedure withCommentaries § 12.1 (2004)). Accordingly, Defendant's answer and counterclaim, which was responsive only to the original pleading, is no longer applicable and should not be considered when determining the jurisdiction of this Court.
Nevertheless, this Court notes that Defendant's compulsory counterclaim would not have been considered when determining the amount necessary to confer jurisdiction upon this Court. As discussed supra, § 8-2-14 confers jurisdiction upon this Court in actions at law where "the amount in controversy" in a plaintiff's claim satisfies certain requisite values. Additionally, "[i]f an action is brought that complies with such statutory requirements, the court also has jurisdiction of all other actions arising out of the same transaction or occurrence," such as a defendant's compulsory counterclaim. 1 Robert Brydon Kent, Rhode IslandPractice: Rules of Civil Procedure withCommentaries § 12.5 (2004)). However, a plaintiff's complaint must properly invoke jurisdiction in the first instance. Further, the Federal cases cited by the Plaintiffs do not find otherwise.see U.S. v. Rhode Island Dept. of Employment Sec.,619 F. Supp. 509, 514 n. 6 (D.R.I. 1985) (The court did not find that a recoupment counterclaim should be considered when fashioning class relief.). When determining the matter in controversy, theBerman Court looked to "the object sought to be accomplished by the plaintiffs' complaint" and the subsequent pecuniary result to either party. Berman v. Narragansett Racing Ass'n,414 F.2d 311, 314 (D.R.I. 1969). In the instant matter, the objective of the Plaintiffs' complaint is to receive statutory damages, and payment or receipt of such damages is the pecuniary result to either party. Therefore, whether Plaintiffs' Complaint meets the jurisdictional amount in controversy depends upon the proper calculation of such damages under § 6A-9-625 and whether it exceeds $5,000.
[2] If this Court were to award $3,906.66 in statutory damages under § 6A-9-625(c)(2) as well as a $1,000 award under subsection (e) the total would be $4, 906.66.